JOHN W. HOWZE, EX'OR, v. SARAH HOWZE.

I give and devise to my beloved wife, Sarah Howze, the settlement of land on which I live in Rusk county, Texas, containing about three hundred and sixty-nine acres for a home during her lifetime. I also give and devise to her as long as she lives, the following negroes, to-wit: Primera and Hannah and her children; also all of my household and kitchen furniture, and all of my stock of different kinds, together with ample provisions for one year: Held, taken in connection with other parts of the will, not to include the farming utensls, as a wagon.

Appeal from Rusk. Tried below before the Hon. Charles A. Frazer.

This case will be found reported on a former appeal, in 14 Tex. R. 232, and 16 Tex. R. 598.

*M. Casey*, for appellant.

*W. Stedman* and *J. H. Parsons*, for appellee, cited 2 Williams on Ex'ors, 1023 ; 3 Ves. Jr. Ch. R. 312.

ROBERTS, J. The only question necessary to be noticed in this case is as to the construction given by the Court below to the words of the will under which appellee claims the wagon and oxen in dispute. By the charge of the Judge, it was held that under the words "all of my stock of different kinds," a wagon as well as a yoke of oxen would pass to the legatee. Was this correct ?

The clause of the will in which this expression occurs is as follows :

"Item 3. I give and devise to my beloved wife Sarah Howze, the settlement of land on which I live in Rusk county, Texas, containing about three hundred and sixty nine acres for a home during her life time. I also give and devise to her as long as she lives, the following negroes, to-wit : Primera and Hannah and her children ; also, all of my household and kitchen furniture, and all of my stock, of different kinds, together with ample provisioos for one year."

It is contended that the farm having been given for a home, the words "all of my stock, of different kinds," conveys the idea that all the horses, oxen, cattle, farming utensils and implements of husbandry, necessary to carry on the farm, were given to his wife. On the other hand it is contended that it was intended to convey only live animals, such as horses, oxen, cattle, sheep and the like.

The cardinal rule in the construction of wills is to follow the intention of the testator. The circumstances which surrounded the testator, his condition and habits of life, his occupation, the nature and extent of the property bequeathed ; whether the whole or only part of it ; the country in which he lived, and the like, are all legitimate objects of consideration

in reading his will, as he intended it to be understood. It has been said " that it is in vain to look to the books for precedents to aid us in arriving at a correct conclusion as to the intent of the testator. T his duty must be performed by every Court for itself in each particular case." (12 Ga. R. 50, Cook v. Weaver.) Notwithstanding this may generally be true, it would certainly be more satisfactory to find a construction of the same words, in any of the sister States, particularly where similarity of expression, habits of life, and character of property would render it authoritative. Hence, some search has been made into the decisions of Georgia, (where the will was made,) Alabama, Mississippi, Tennessee and Kentucky ; and no case in point has been found.

The fact that the testator had provided his wife with a farm to be her home for life, and expected her to raise the children that he had by her, favor the conclusion that he might have intended that his wife should have the wagon and other farming implements. Upon looking further into the will, however, in connexion with the inventory, it will be seen that his children by his former wife were given a negro each, worth five hundred dollars ; that there were about sixteen negroes at the time of his death ; that perhaps not half of those were disposed of ; that a negro of the same value should be given to the rest of his children as they should arrive at maturity ; that his widow, who was executrix, and son, who was executor, should have charge of all the surplus property not specifically given off, so as to make provision for the younger children as they grew up ; that it was only upon the " event that things did not get along peaceably and quietly," that all his property, except that given to his wife, was to be equally divided between all his children ; that he recommended to his executors to hire out one or two of his negroes every year on account of their being hard to govern. By all which it very plainly appears, though it is not plainly so expressed, that he contemplated and designed that the surplus property, not spe-

cifically bequeathed, should be kept together, so as to have a
provision in store for the younger children, so long so it might
be agreeable to those left in the management of his property.
And there being no other farm, left by him, it is not at all im-
probable that he expected the farm left to his wife would be
used by them for that purpose. In that event the establish-
ment that he designed to be kept up for the benefit of the
minor children, would need a wagon and other implements of
husbandry as much as it had in his life time. And if it should
so happen that " things did not get along peaceably and qui-
etly," so that the surplus property thus left would have to be
divided, it is reasonable to suppose that he would more likely
wish his children to have the benefit of the wagon and other
implements, than his widow, having made for her a specific pro-
vision, and secured it to her beyond all contingency.

Now if the testator had made a minute disposition of all his
property in specific legacies, and no mention had been made of
the wagon, the presumption would have been very much in-
creased that he designed her to have it.

[Such then are the probabilities arising upon the whole
tenor of the will. Descending from the general context to
the particular sentence, " all of my stock, of different kinds,"
the probabilities still greatly increase in favor of the children
and against the widow. The question is what would a farmer
of moderate means in this State or in Georgia mean by the
expression " all of my stock of different kinds ? " Would he
mean a wagon ? We think not. That expression is almost
universally the appropriate designation of domestic animals
on and about a farm. And among farmers of moderate means
it would most generally be applied only to cattle, sheep, hogs,
and goats, and not to animals for the team or saddle, such as
horses, mules and oxen. This would be variant in different
localities, just in proportion to the amount and character of
stock raised. It is not necessary, however, to press this dis-
tinction in this case, as a fair, liberal construction will cer-
tainly give her the oxen in dispute.

Howze v. Howze.

Appellee's counsel furnishes us with an English construction of the phrase " farm stock," and shows that it has been held to mean, not only all movable property upon and belonging to the farm, but also growing crops. If stock in the will was used with this meaning, it would comprehend the household and kitchen furniture, and also the provision for one year, that are specified in the same sentence. Therefore the force of this analogy is weakened, on the same principle that an argument defeats itself, which proves too much. And the same may be said of another phrase furnished, " live and dead stock ; " which is construed to include " corn, hay, straw, carts, &c." The great objection to these analogies, as authority, is, that these are expressions not in use among the mass of the people, and if they should happen to be used, it is as an exotic imported into the country.

In numerous cases of wills, that have been examined, in the States before alluded to, words similar to those in this will occur, and sometimes exactly these words. But in no case have they been found alone to indicate all of the movable property on the farm. They are found in connexion with " household and kitchen furniture," " farming utensils," and the like, just as they are, in part, in this will ; which shows that they are generally used in a far more limited sense than that contended for by appellee.

In a case in Kentucky, a man who was entitled to half pay as an officer in a Virginia regiment, made a will, in which he said, " It is my desire that James Noble Wood shall have (after enumerating some tracts of land) all my stock and movable property, except that which is hereinafter mentioned ;" and the only subsequent bequest, to which the exception could be applied is one to Nancy Smith of a horse, some household furniture," &c. The question was, did the half-pay pass by the words " stock and movable property." The half-pay had been collected, and was in the shape of money, when the controversy arose about it. The fact that the word stock was asso-

ciated with the words movable property, and the fact that the bequest of a " horse " was excepted out of the " stock and movable property," were held by the Court to be important to show that the money collected upon the claim for half pay, was not intended to pass under the terms " movable property." This is strongly inferential, though not express, to the point that the Court regarded the word stock to be confined to domestic animals, such as horses and the like.   (6 Dana, R. 343, Wood's Adm'r v. George's Adm'r.)

It may be an omission on the part of the testator, that he did not include the wagon and other farming implements in this bequest to his wife.   But unless the import of the words used by him in the will, considered with all their relations to other parts and the subject matter of the bequest, will justify it, we cannot supply the omission.

We do not think that the word stock, as it stands in the will can be made to mean a wagon ; and the Court erred therefore in so holding.   Judgment reversed and remanded.

Reversed and remanded.