ELIZABETH A. BROKAW, APPELLANT, VS. ALEXANDER MC-DOUGALL, ET ALS., APPELLEES.

1. When a bill filed by heirs at law against a widow for partition of land contains an alternative prayer that the widow be required to elect whether she will "take dower or a homestead," a demurrer that the bill does not state a case authorizing such relief ought not to be allowed if the case made by the bill sustains any material prayer for relief.

2. A widow, not an heir of her husband, and who has elected to take dower, cannot claim a homestead in the lands of her husband under the homestead clauses of the Constitution. Her right is that of dower only, which is not affected by the homestead provisions.

3. The homestead of a testator residing in this State, who dies leaving

a wife and children, is not the subject of testamentary disposition. Such property remains as though no will had been made, and descends to the heirs subject to the right of dower.

4. A report of commissioners allotting dower, which ·by mistake sets apart to one of the parties land not embraced in the bill, should be set aside and recommitted for correction and a proper allotment.

5. Commissioners in partition report that they have allotted to the widow the house buildings and improvements with ten acres, and to the two children of decedent fifty or sixty acres each, without buildings, and that in their judgment the division is "equal, equitable and fair," but make no estimate of value or productiveness. On motion to set aside the report, affidavits of two citizens were filed in support of exceptions to the report, who agree that the value of the share allotted to the widow is six thousand dollars, and that of each child about six hundred dollars, and no other testimony as to value was before the court : *Held*, That *prima facie* such division is manifestly unjust to the children, and a decree setting aside the report will not be disturbed.

6 When commissioners in partition take testimony for the purpose of ascertaining the value of property to be divided, they should return the same to the court so that the court may determine as to the correctness of their report. And when testimony is to be taken the parties should have notice so they may be present, by themselves or agents, it being a judicial investigation affecting their interests.

Appeal from the Circuit Court for Leon county.

Peres B. Brokaw died leaving surviving him his widow, who is the appellant, and three children, Phœbe, Eliza and Abram. Abram died before the commencement of this suit, unmarried, without issue and intestate. The children of ·Peres were the issue of a former marriage. By his will he gave his property to the widow and his three children, share and share alike; providing, however, that on the death of the widow her share should go to the children. The widow was named as executrix, and qualified as such August 5, 1875. The bill was filed by said Phœbe and her

husband, Alexander McDougall, and by Eliza by a next friend, against appellant in her own right and as executrix, and alleges in addition to what has been stated that the testator was seised and possessed of a quarter section of land in Leon county, Florida, " on which the residence in which he died was located and which he occupied and enjoyed as a homestead for several years prior and up to the time of his death ; " and also of a town lot in the city of Tallahassee ; and that the executrix by virtue of powers contained in the will has sold a part of the quarter section of land, and accounted for the proceeds in her settlement with the Probate Court; that the balance of said quarter section and said town lot are all that remains unsold of the testator's real estate, "and that the defendant after the payment of his (testator's) debts by the terms of the will was entitled to one-fourth share thereof for the term of her natural life, and Abram, Phœbe and Eliza each was entitled to one undivided fourth share thereof in fee simple, and to the like interest in the remainder after the death of the defendant, in her life estate," and that Abram having died said Phœbe and Eliza are each entitled to one undivided half interest in his share of the estate.

It further alleges that the widow filed in the Probate Office a written dissent as to the provisions made for her in the will and in such dissent claimed." all rights of dower and of homestead, and all other rights to which under the laws of Florida and the Constitution thereof she, as the wife and widow of Peres B. Brokaw, is or may be entitled " ; and the bill states that she made no election of a " child's part" and charges that she "is confined to dower or the right of homestead" and not to both as she has claimed, and that she should be put to her election, and alleges that said Phoebe and Eliza are each " seised in fee simple of an undivided half interest in said homestead lands of said es-

tate," and " subject to the defendant's right of dower or of homestead therein for the term of her natural life as she may elect." The bill prays " that the defendant may be required to elect to take either her dower or a homestead in said real estate," and if she elects to take dower that the same may be assigned to her, and that the balance of the real estate may be divided between said Phœbe and Eliza ; " or if the defendant elects to take the homestead which accrued to the heirs of P. B. Brokaw that the commissioner be directed to ascertain the quantity and identity of the land to which said homestead right may attach, and having ascertained the same to divide, separate and allot one-third part thereof in quality and value to the defendant, to be held and enjoyed by her for her natural life, and that they divide and separate the other two-thirds and allot one-half" to Phœbe and the other half to Eliza, " to be held and enjoyed by each of them and their heirs in severalty," and for general relief.

The defendant, Mrs. Brokaw, demurred to so much of the bill as prays for an election between taking dower or homestead in the real estate on the ground that the bill states no such case as entitles them to this relief; and answered as to the residue thereof. The answer " insists that under the laws of Florida she is entitled to hold all that remains unsold of said quarter section and of said lot * * in Tallahassee which adjoins said quarter as a homestead, or so much of said lot as, with what remains unsold of said quarter section, will make the quantity of land to which, under the laws and Constitution of the State, she is entitled as a homestead, with the exception of so much as may be assigned to her as dower ;" and " that she is entitled to both homestead and dower in said property and in the property of her said husband ; not merely * * to one or the other," and " that she should not be required to make her election

between the two." The answer further states that at the death of the testator said city lot was the only piece of his real property not under mortgage, except another lot which has been sold by her under the will. That her other real and personal property were under mortgage to the extent of their full value, except the homestead which was mortgaged for $1,000. This mortgage on the homestead she holds by assignment as security for money paid thereon out of her own funds and earnings.

The answer further says that the "unsecured indebtedness" of the testator remains nearly or altogether unpaid because of the insolvency of the estate ; and states she " is willing to have her dower assigned and set apart to her * * said dower to include the dwelling-house and outhouses of the deceased as provided by law, and is willing to have the other portion of said land to which she and the surviving children are entitled set apart and apportioned among them or sold for partition." She does not concede that Phœbe and Eliza are entitled to more than two-thirds. She claims one-third " inasmuch as Abram neither claimed nor established any right to homestead during his lifetime."

The other facts are sufficiently stated in the opinion.

*R. B. Hilton* for Appellant.

I. The theory of complainants upon which their bill is based is that the widow had the right to either dower or homestead, as she might choose, and could be put to an election between the two. The contention of defendant is that she is entitled to both homestead and dower. The decision of the Chancellor is against both these positions, to-wit: that her only rights are as dowress. And the ruling of the Supreme Court at its last term and after the decree

of the Chancellor in this case, and after this appeal had been entered, to wit: in the case of Wilson vs. Fridenburg, from Duval county, would seem to confirm the views of Judge Walker, and to set the matter at rest. But as far as I have been able to ascertain their sentiments both these decisions were a surprise to many members of the profession. This, together with the other fact that Judge Walker's decision had been appealed from before the ruling of this court in the case from Duval, is my excuse for most humbly and respectfully asking a reconsideration of the matter involved.

It is submitted with great deference, that the court is not constrained by the terms of the Constitution to limit the right of homestead to the class of persons coming under the designation of *heirs* as defined by the common law.

The court, which takes judicial knowledge of the political history of the country, and especially of events so memorable as the framing of the State's organic law, will take cognizance of the qualifications and mental training of the men who composed the Convention of 1868. The court will therefore know that the members of that body not being lawyers but laymen, are likely to use this word " heirs," not in its technical common law sense (which is even different from its meaning in the civil law,) but in its popular sense by which is understood all those who, by statute or testamentary devise, share in the partition or distribution of a dead man's property. I have, myself, no doubt but the members of the Convention in framing and adopting the homestead clause of the Constitution intended to classify together widow and children of the deceased, and to embrace them all, under the term " heirs." What reason can be imagined why they should have been more careful of the interests and welfare of children than their mother; of sons and daughters than of the bereaved wife

and widow ? Yea, more, can it be conceived, and we are forced to that, if we adhere to the technical sense of the word, and a strict, literal construction of their language, that they were careful to bestow benefits upon the husband's relations to the hundredth degree, at the expense of his creditors, and yet willing to see the dearest object of his affections turned out of house and home. But it is said the widow is provided for by the law of dower, under our statutes. I reply that she has no *guaranty of dower under the Constitution.* That which the statutes give, the statutes may take away. There is nothing to prevent the Legislature of this State, as has been done in many other States, from depriving the wife of dower in any property alienated by her husband in his lifetime, either with or without her assent. The spirit and motive of all Constitututional homestead laws is especially a provision and guaranty of a home for the wife and widow and children and inmates of the home and house, of the husband and father.

But I maintain that it is no strained construction of the terms of the Constitution to extend its homestead exemption so as to include the widow. "An heir," says the Supreme Court of Kansas, (McKenney vs. Stewart, 5 Kan., 384,) " an heir at law is simply one who succeeds to the estate of a deceased person. In this sense the wife is an heir of her deceased husband." And our statute sets forth under what circumstances the wife (widow) shall be sole heir at law. By the acts both of November 7, 1828, and February 8, 1838—acts in force at the time the Constitution was framed—she is given the right of inheritance both as regards personalty and realty. McClellan, p. 474. " Statutes relating to homestead, when the language used departs from the manifest intention of the Legislature, will

not be taken literally." Thompson on H.; Secs. 7 and 8; Heard vs. Downer, 47 Ga., 631.

Though not all the decisions of the States affirm the widow's right to both dower and homestead, yet much the larger number of those ruling on it have so held, and of the States whose courts have so decided several are of the highest authority. Thompson on H., Sec. 555, *et seq.*

And it makes no difference as to the widow's rights in this respect, whether she elects to take under the will of her husband or not. Thompson on H., 911 ; 25 Pa., 33 ; 3 Ohio, 369, 375.

Is there any example of a homestead law which, providing for the children, leaves their mother unprotected and at their mercy ?

I have alluded to her dower rights. But suppose the case of common occurrence, both in England and this country, of a woman who in contemplation of marriage accepts a settlement in lieu of dower, and who afterwards by joint deed of her husband parts with the settled property. The husband afterwards dies insolvent ; she has no dower ; her children have a homestead ; she has nothing. They may turn her out of house and home ; for unless she is protected by the constitutional provision which, I must think was intended ; in cases where she and her husband were in the enjoyment of a home at the time of his death, to secure such home to her, quite as much to *her* children or his.

The conclusion reached by this court in the Wilson case, *supra*, was, I think, unquestionably correct. In that case the widow and executrix, under order of court, made in a case in which the children were not parties, mortgaged the homestead. In proceedings for foreclosure the children's claim on homestead was sustained in opposition to the mortgage ; and I say rightly sustained. When the court went further and held that under our Constitution she has no

homestead rights other than the power to prevent the alienation of homestead during coverture, I respectfully submit that this was *obiter*, not being a point necessarily involved in the decision of the case.

A Bolognian law enacted that " whoever drew blood in the streets should be punished with the utmost severity." But this law was held not to extend to the surgeon who opened the vein of a person that fell down in the street in a fit.

In other words, a law intended to punish an act endangering life should not be construed to make it criminal to preserve life.

The court will force language out of its literal meaning rather than do wrong to a man's widow, as in Gibbon vs. Gibbon, 40 Ga., 575, in which her Supreme Court say: " By the laws of Georgia the wife is expressly made the heir of husband. If there be no children, she is the sole heir, and if there be children she is one of the heirs. A man's heirs are those who by law take his property on his death without a will," &c., &c.

The court is referred to the facts in that case. I also cite as showing a rule of construction governing courts in cases like that at bar:

Mace vs. Churchman, 45 Maine, 250. This was a case under a statute of Maine which provided that the real estate of married women who die intestate shall descend or be distributed to her heirs. The court refused to give it such a construction as would deprive the surviving husband of the rights which he would have enjoyed under a previous law. I refer the court to the argument of counsel for appellant, no less than the opinion of the Judges in that case.

" Homestead," as defined by Abbott, (Law Dic., 567) "in a general sense designates the land and dwelling appropri-

ated as the permanent residence of a family." Then for a homestead there must be a family. But if the widow had no homestead rights, here is a dwelling and land appropriated and consecrated as a permanent residence of a family, from which the surviving head of the family, the mother of the children, is excluded.

II. There was not sufficient grounds upon which the court below set aside the action of the commissioners in assigning Mrs. Brokaw's dower. From the character of the commission merely as *commissioners* there is the highest possible presumption in favor of the justice of their action.

Against their action, and the character which the law imparts to them, we have what? The affidavit (ex parte, of course) of two persons of whom and of whose capacity, looking into this record and judging from its disclosures, the court can know nothing, and can infer nothing. There is simply the opinion of two men, of whom the court knows nothing, because the record discloses nothing against the solemn, deliberate and unanimous action of a sworn commission consisting of five gentlemen. Lenox vs. Livingston, 47 Mo., 256 ; 19 Texas, 567 ; 2 Dan. Chy., 1130 ; Jones vs. Totty, 1 Sim., 130 ; 1 M. & K., 330.

As to the somewhat singular, not to say absurd, proposition made by complainants for a *swap* of lands, it seems hardly worthy of notice ; and really to be nothing more than trifling ; as if a guardian *ad litem could* in this manner trade off lands accorded to a minor! But taking it seriously ; the answer to it and the objection to it, on the part of the widow, is that it proposes to deprive her of her house and home ; the dwelling in which her husband and herself resided at the time of his death ; the occupation and enjoyment of which is guaranteed to her by the laws of Florida for the term of her natural life. Thompson's Dig., 185.

The proposition that a widow who is but a life tenant should surrender the dwelling for unimproved land, however valuable yet of no use to her, is on its face an absurdity.

By reference to the report of the commissioners it will be seen that they set off to Mrs. Brokaw ten acres of land (including the dwelling-house); to one of the daughters, 53 acres and also a city lot ; to the others, 65 acres and a fraction.   By express words in Magna Charta it is provided in favor of the widow, that " for her dower shall be assigned unto her the third part of all the lands of her husband. which were his during coverture."

In my opinion the Commissioners did the widow less than justice.   The property is surely not city property. Unless under peculiar circumstances, which the record does not show to exist in this case, the widow is entitled to the " whole of the dwelling house, out houses, buildings and other improvements thereunto appertaining."   And under the decisions of the Supreme Court of Tennessee, from which State our statutes on the subject would seem to have been taken, in setting off to the " widow " one-third part according to quality and quantity, the value of the dwelling house is not to be taken into consideration in fixing values.   Vincent vs. Vincent, 1 Hask., 333.

As we have seen by Magna Charta the widow was endowed by one-third part of the lands of her husband. And says Washburn, 1 Real Property, 175, " So uniform has the common law of both countries been in this respect that in popular phrases a widow's dower is called her thirds."

And now comes in our statute which affirms Magna Charta, as to the widow's one-third adding, however, in which said third shall be comprehended the dwelling house in which her husband shall have been accustomed most generally to dwell."   Section 1, Acts of 1828.   And

when it is said in Section 5 of the same act, Thomp. Dig., 186, that commissioners in assigning her dower "shall allot and set off by metes and bounds one-third part according to quantity and quality," I don't think there is or can be much difficulty in discovering the meaning of the clause, though practically there may sometimes be trouble in executing it.

If it was designed to claim for the children the benefit of the proviso for cases of "manifest injustice," it was necessary that there should be proofs in the record of the " injustice " for which that clause is intended to provide. There is no such proof, and no facts on which to base such a conclusion; the action of the commissioners negatives their existence; and the court cannot assume what the evidence does not show.

*John A. Henderson* for Appellees.

1. The judgment of the court denying her homestead as well as dower estate in the said lands.

2. The decree of the court setting aside said report of commissioners.

For the appellees, it is contended that there was no error ; and for authority, submits on the first ground, that the decision of the Chancellor was strictly within the case in this court of Wilson, Executrix *et al.*, vs. Fridenburg, decided June term, 1882.

On second ground, that the commissioners were correctly directed by the court, in the allotment of dower and the distribution of estate. Acts of 1828, §3, as amended by Chap. 1447 ; Acts of 1864, Laws of Florida, McC. Dig., 477, §7.

The widow was not entitled for dower under Sections 1 and 2, Acts of 1828, to the dwelling house, &c., because it

was manifest that the share allotted to her could not be so applied without injustice to the appellees, and came clearly within that exception. See Acts of 1828, and 1864, McC. Dig., pp. 475-6-7, and affidavits of Hawkins and Lewis.

The commissioner's report should have been set aside, because they did not observe the law but disregarded the same and gave to the widow more than one-third in quantity and quality, &c. See offer of appellees to give both for hers or two for one and pay bonus; see also affidavits of George Lewis and A. B. Hawkins.

In making the assignment of dower, the estimate of the third part has reference to the productive value and not the quantity. Such part of the estate should be given to her as will be one-third part of the annual income or profits and no more. 1 Williams on Real Prop., 4th Ed., 287; Coats vs. Cheever, 1 Cow., 476; McDaniel vs. McDaniel, 3 Ired., 61; Smith vs. Smith, 5 Dana, 179; Leonard vs. Leonard, 4 Mass., 533.

Complainants were entitled to notice of time and place of meeting of commissioners and should have been allowed to introduce testimony as to the values before the commissioners. See Decree of Allotment, &c., McC. Dig., page 477, §8.

Objections to the confirmation of the report were properly made. McC. Dig., p. 478, §13; Williams on Real Prop., 4th Ed., 288; Chapman vs. Scholder, 10 Ga., 321.

THE CHIEF JUSTICE delivered the opinion of the court.

The first ground of alleged error in the decree is the overruling of defendant's demurrer " to so much of complainant's bill as prays that she may be required to elect to take either her dower or a homestead in the real estate mentioned," the cause of demurrer being that complainants have not stated a case entitling them to such relief.

There are other prayers in the bill, the principal one being for a partition, and as to that the bill states a proper case for relief. A demurrer must be grounded upon a " short point " upon which it is clear the bill would be dismissed at the hearing. Brooke vs. Hewitt, 3 Ves. Jr., 253 ; Verplanck vs. Caines, 1 John's Ch., 57 ; Earl of Suffolk vs. Green, 1 Atk., 450 ; Story's Eq. Pl., §§526, 528.

Verplanck vs. Caines, presenting this identical question, says : " A demurrer must be founded upon some certain and absolute proposition, destructive to the relief sought for." The result is that a demurrer is not allowed to an alternative prayer, if any other relief prayed may be granted. We find no error in overruling the demurrer.

The second alleged ground of error is the decree of the Chancellor that defendant " as widow was not entitled to a homestead estate in the lands and tenements mentioned in the bill."

It was decided by this court in Wilson vs. Fridenburg, 19 Fla., 461, that the exemption of the homestead provided for in the Constitution of this State, Art. IX, is exemption from forced sale for the debts of the owner who is the head of a family residing in this State ; and that this exemption of the homestead from such sale is all that enures to the heirs of the owner upon his decease.

It was also held that the language of the article, the homestead " shall not be alienable without the joint consent of husband and wife, when that relation exists," operated to prevent any alienation or other testamentary disposition of the homestead by such head of the family who may die leaving a widow and children.

It was further held that this exemption of the homestead from liability to pay debts and prohibiting such alienation, so extended in behalf of the heirs, did not confer any new

right of property or tenure upon the widow, in the homestead, either as to the heirs or as to the creditors.

That without this exemption clause the heirs were not protected from creditors while the widow was protected by law in her right of dower; while under this homestead exemption the heirs are protected and no right is taken away from the widow, her right of dower under the general law being unaffected by the constitutional clauses referred to.

The rights of the widow and children are therefore not controlled or qualified by the provisions of the will so far as the homestead property is concerned, and in that respect the title descends, according to the law regulating descents, to the heirs, subject to the dower rights of the widow, as though no will had been made.

Respondent here, referring to the ruling of this court in Wilson vs. Fridenburg, very properly asks that the decision in that case, as respects the status of the widow, be reconsidered. With appropriate deference to the conflicting opinions of members of the bar upon the question we have again examined the question, but with the lights before us we are unable to reach a different conclusion in regard to the rights of the widow.

The remaining ground upon which it is claimed that the decree of 28th September, 1882, should be reversed is, that it erroneously set aside and quashed the report of the commissioners, allotting and assigning dower to the defendant.

The report of the commissioners assigned to the widow the lot numbered one in the plat accompanying the report, " containing ten acres, more or less, and on which is situated the dwelling-house, out-houses and improvements, occupied by the said P. B. Brokaw, last before his death."

It assigns to Eliza Brokaw, one of the two surviving heirs, lot No. two, containing fifty-three acres and a frac-

tion, and lot thirteen in the north addition to Tallahassee ; and to Phœbe McDougall, the other surviving heir, lot No. three, containing sixty-five acres and a fraction.

The complainants not being satisfied with the allotment excepted to the report on the ground—*First*, That in the description of the portion allotted to Eliza Brokaw an error occurs, which locates a large part of the 53 acres outside of the quarter section intended to be partitioned and within the city of Tallahassee.

*Second*. That the commissioners failed to notify complainants or their solicitor of the time and place of taking testimony as to the value of the lands and improvements.

*Third*. That they omitted to report to the court the testimony upon which they based their judgments of the values of the several portions, for the information of the court.

*Fourth*. That there is no equality in the value of the portions allotted, the share allotted to the defendant being of greater value than both the shares allotted to the complainants, wherefore the complainants say the report should be set aside and the matter recommitted with further directions, &c.

In support of the fourth exception they filed the affidavits of two citizens who each say they are acquainted with the premises and the improvements thereon, and have examined the map of the sub-divisions as reported by the commissioners, and they consider the value of lot one allotted to the defendant at six thousand dollars, the value of lot two set off to one of the complainants at five hundred and thirty dollars, and the value of lot three set off to the other complainant at six hundred and fifty dollars.

Upon these exceptions and affidavits the court made an order setting aside the report of the commissioners, and directed them to proceed to execute the order appointing them according to its terms.

The report of the commissioners placed no valuation upon the whole tract or any portion of it, nor do they report the testimony taken by them or other evidence before them upon which they came to their conclusion, nor does it appear that they took any sworn testimony unless it may be inferred from their statement " that in considering qualities and values of the several lots of property they have made the basis of their action the prices and values, so far as they could learn, realized in the sale and transfer of real estate in the city of Tallahassee and its immediate vicinity for a year or more last past, and that to the best of their skill, knowledge and judgment the foregoing division of the premises is equal, equitable and fair, and that the several lots bear a like relation as regards quantity and quality or value."

As to the first ground of exception, the error in misdescribing the lot two set off to Eliza Brokaw, and including lands not embraced in the proceedings, a mistake was evidently made by the commissioners, and the court should have set the report aside for this, if for no other reason, in order that a correct report and allotment might be made. This was doubtless one of the reasons influencing the court in recommitting the matter to them.

The real question of importance under the exceptions is whether the court was justified in quashing the report on account of the alleged inequality in the quantity and quality of the several portions allotted whereby " manifest injustice " was done to the heirs.

The position of the appellant is as stated in the argument that there were not sufficient grounds appearing in the cour below upon which the report should have been set aside, and that " from the character of the commission, merely as commissioners, there is the highest possible presumption in favor of the justice of their action." Coun-

sel cites in support of the finality of the judgment of the commissioners, the cases of Manners vs. Charlesworth, 1 Mylne and Keen, 330, and Jones vs. Totty, 1 Simons, 136. These cases were decided upon exceptions to a return of commissioners in partition and in both it was held that the report could not, under the law and practice in England at the time, be set aside upon the ground of inequality in the allotment, and that no "instance could be found of interference with the action of the commissioners where the regularity of their proceedings was not impeached." It was said that " considering that the three commissioners here were named by the three different parties and were, therefore, judges of their own choice, the principles which applied to arbitrators were properly applicable to them; and for that reason, he should have hesitated to suppress the return, even if he had been satisfied that the commissioners had erred in their judgment as to value." Jones vs. Totty.

In Tennessee, Vincent vs. Vincent, 1 Heisk., 333, cited by appellant, it is held that " the statute does not contemplate a valuation of the improvements, and that such of them as are allotted to the widow shall be set off against an equal value in land. The direction is explicit, that such part or portion only of the dwelling house, outhouses, &c., as can be applied to her use, without manifest injustice to the children, shall be allotted to her." Ib., 339.

In that case the report gave the widow the buildings, including the mansion house, but did not give her one-third in value of the land. *The report was set aside* on her motion, upon testimony showing the facts. From this construction of the Tennessee statute, and from an examination of the statute itself, it is manifest that it differs from the statute of Florida.

In Lenox vs. Livingston, 47 Mo., 255, cited also by ap-

pellant, exceptions were taken to the report of commissioners; not alleging fraud, partiality or misconduct, but that it was prejudicial to the interests of the appellant. The court says: "The commissioners were the proper persons to determine as to what part of the land should be assigned, and in the absence of testimony showing that they abused their discretion, their action cannot be interfered with. The appellant rested his whole case upon his simple allegations. He did not introduce or offer to introduce any evidence whatever in support of his charges. No court would have been justified in setting aside an official report made by men in the performance of an official duty, and acting under the sanction of an oath, on the unsustained assertions of an interested party."

The only other authority cited by appellant is Jewett vs. Scott et al., 19 Texas, 557. This was a case of partition of land, in which the appellant excepted to the division as unequal and unjust, in that the lands assigned to one greatly exceeded in value those allotted to the other. There were *six* commissioners and they reported that the portions allotted to each were "equal in quantity and quality," and gave their reasons for making the division in the mode pursued. *Four* witnesses testified that the lands allotted to appellant were of considerable less value than the lands allotted to the other party. Three of the commissioners testified in support of their action, showing their diligence and good intentions. Says the court: "They were selected for their ability and integrity. The law presumes that they acted with zeal, skill and fidelity in their trusts, and their act cannot be impeached unless for fraud, partiality or gross mistake in their judgment. There is no pretence or charge of fraud, and the question is whether there is such a mistake in their decision as to operate injustice to the appellant. Upon a review of the facts the mind is

forcibly impressed with the conviction, that there must be error and wrong in the proceeding. The commissioners acted from inspection on their own judgment exclusively, and no doubt they acted honestly. But no witness is called who concurs in their estimate of the value of the several allotments. All the witnesses are of opinion that the allotments were very unequal in value and greatly to the disadvantage of the appellant. The question of inequality was the matter in issue, and unless the report of the commissioners is conclusive, it seems that the *prima facie* presumption of its justice was rebutted by the force of the evidence ; and it should have been supported by witnesses who would have concurred, to some extent at least, with the judgment of the commissioners. The report was set aside.

By our statutes the widow is endowed of one-third part for life in the lands, tenements and hereditaments of which her husband died seised, &c., and in that third " shall be comprehended the dwelling house in which her husband shall have been accustomed most generally to dwell next before his death, together with the offices, out ,houses, buildings and other improvements thereunto belonging or appertaining ": *Provided*, " That if the whole of the said dwelling house, out houses, buildings and other improvements thereunto appertaining, cannot be applied to the use of the widow without manifest injustice to the children or other heirs, then and in that case such widow shall be entitled to such part, not less than one-third part, as the court may deem reasonable and just."

The complainants on excepting to the report of the commissioners filed the affidavits before referred to in support of the exception that there is no equality of value between the part assigned to appellant and that allotted to the children. These affidavits were considered by the court with-

out objection, so far as the record shows, and no counter affidavits in support of the report were filed or offered. The commissioners make no estimate of the value of either portion but say in general terms that the division is "equal, equitable and fair." The court heard the exceptions and the motion to quash the return upon the report, " the exceptions thereto and the accompanying affidavits, and the respective solicitors having been heard," &c.

And it appeared by the affidavits that the part allotted to the widow was in value more than five times greater than that of both parts assigned to the children. There is nothing in the report showing that these several estimates of value are incorrect. The respective parties went to a hearing upon this state of facts duly sworn to and uncontradicted.

The statute gives to the widow the use of one-third of the " lands, tenements and hereditaments ;" not of the lands alone, but of the lands, structures and uses.

In estimating " quantity and quality " for the purposes of equality of division, where lands and improvements are being dealt with, the *value* of the several portions of the property must necessarily be considered, and this value must be determined by the money value in the market, its productive value, and the incomes or rents and profits it will produce. An equal division of the lands, giving to each party her share by metes and bounds, which would give to one of them the portion having all the houses and improvements, worth in market or in productiveness ten times as much as either of the other shares, must be manifestly unjust to the other heirs. While the law deals with appropriate liberality in giving to the widow the mansion house and other improvements, yet it provides that where this may operate with manifest injustice to the children or other heirs the widow shall be entitled to such part, not

less than one-third part, of the lands, tenements and hereditaments, " as the court may deem reasonable and just." This contemplates not alone the division of the lands, but the division of the entire property including improvements in such manner that no injustice shall result to the children. They, as well as the widow, are entitled to consideration. When the law says the widow shall be endowed of onethird, it means one-third as near as practicable in quantity and quality, but it does not mean six-sevenths in quantity and quality.

While the commissioners in their return say that this division was "equal, equitable and fair," they do not show to the court that they have given to each party one-third in quantity or quality of the property, nor is it shown in any manner as against the depositions that such was the result of the division. They may have assumed, and perhaps did assume that the widow was entitled not only to the one-third but also to a " homestead " in addition to the one-third. Such is the claim made by her in her answer and in the argument here, and this may have been the view of the commissioners. From what we have said it is clear that this proposition cannot be supported.

It is said by the court in the case of Vincent vs. Vincent, above referred to, that " if it appear to the court assigning the dower that the whole of the said dwellinghouse, out-houses, offices and appurtenances cannot be applied to her use without manifest injustice to the children or other relations, then such part or portion thereof as the court shall conceive will be sufficient to afford her a decent residence, due regard to her condition and past manner of life, shall be assigned to her."

One ground of exception to the report is that the complainants had no notice of the time and place of taking testimony as to the value of the lands and improvements; and

further, that such testimony was not reported to the court for its information.

In the examination of witnesses, the proceedings of the commissioners should be open and not secret, as " they act in a judicial capacity, in the nature of a court, at which the parties and their agents have a right to be present." 2 Dan. Ch. Pr., 1154. And in Cecil vs. Dorsey, 1 Md. Ch. R., 227, the Chancellor says: " It seems to me to be quite apparent that the revising power of this court cannot be wisely exercised, and the return ratified or rejected, as justice shall dictate, unless the value of the whole estate, and the value of the several parts, as ascertained by the commissioners, is reported. The great object to be attained is a partition among the parties interested, fairly and equally in value according to their several just proportions, and I cannot understand how the court can see that this is done, if the commissioners may or may not show by their return the value they have put upon the entire estate and of each part thereof."

In the present case it does not appear by the report whether witnesses were or were not sworn and examined. The commissioners say that in considering qualities and values of the several lots " they have made the basis of their action the prices and values, so far as they could learn, realized in the sale and transfer of real estate in the City of Tallahassee and its immediate vicinity for a year or more last past."

They still do not report what those values were of the several parts allotted, so that the court could determine, in its revising power, that the allotment is properly made.

According to the report they had information of the values of property in Tallahassee and its vicinity, as realized in the sale and transfer of real estate, for a year or more last past. If this information was obtained from the testi-

mony of witnesses, such testimony should have been duly taken and reported to the court for its consideration. If the information was obtained by irresponsible statements, not on oath, made to the commissioners or some of them, it was not such testimony as should be relied upon in adjudicating the rights of the parties.

We do not discover that the Chanceller abused the discretion confided in him by the statute, in setting aside the return of the commissioners. The several decrees appealed from are affirmed.