Caro et al. v. Caro et al.—Syllabus.

GEORGE W. CARO, T. S. CARO, B. G. CARO AND JAMES W.
CARO, APPELLANTS, VS. FLORIDA N. CARO, GEORGIA A.
CARO, MARY E. GORMLEY, WILLIAM S. CAIRO, JOHN H.
CARO, ANNIE L. QUINA, AND HER HUSBAND GREGORY
QUINA, PHILIP G. CARO AND JOHN G. CARO, APPELLEES.

HOMESTEAD LAW—HEAD OF FAMILY—DEVISE OF HOME-
STEAD.
1.  Where a widow owns in fee a lot less than half acre in size
    in an incorporated city, and resides thereon, making it her
    home and place of actual residence for many years prior
    to her death, and dies there, and such widow has several
    children, all of them over twenty-one years of age, but
    none of them reside with her except two unmarried
    daughters who resided with their mother continuously up
    to the time of her death, making her home their home,
    and they having no other home or dwelling place but
    their mother's, both of such daughters being of age, and
    both of them by sewing earning enough to supply all of
    their wants except their food which they ate at their
    mother's table, both of them continuously remaining under
    the protection of their mother's roof-tree and family fire-
    side; one of them for several years prior to her mother's

death acting as her nurse, the mother being in feeble health, and attending to her personal wants generally, while the other daughter attended exclusively to the duties of house-keeper and to her mother's outside business affairs, under these circumstances, **Held:** (1) that such widow was the head of a family; and (2) that such lot upon which she résided and died was her homestead; and (3) that under the Constitution of Florida of 1885 she was prohibited, where she left children surviving her, from devising such homestead by will; and (4) that a will by which she undertook to devise such homestead to two of her surviving children to the exclusion of her other children was void as to such homestead.

(MAXWELL, J., took no part in the decision of this case.)

This case was decided by the court In Banc.

Appeal from the Circuit Court for Escambia County.

The facts in the case are stated in the opinion of the Court.

*Liddon & Eagan,* for Appellants;

*John C. Avery,* for Appellees.

TAYLOR, C. J.

The appellants, as complainants below, filed their bill in equity in the Circuit Court of Escambia county against the appellees as defendants below, alleging in substance as follows: That the complainants and defendants are the heirs at law of Mary A. Caro, deceased, who died on

the 13th of February, 1898, in Pensacola, Florida; that
said Mary A. Caro was at the time of her death the head
of a family residing in the State of Florida, and was seiz-
ed and possessed and residing upon the following describ-
ed real estate situated in the city of Pensacola, Escambia
county, Florida, to-wit:   Lots twelve (12) and thirteen
(13) and north half of lot fourteen (14) in block one (1)
of the Belmont tract in said city, containing less than
one-half acre, and being her homestead; that the com-
plainants and defendants are all brothers and sisters, and
children of the said Mary A. Caro and her husband Phil-
ip A. Caro, who died on the 18th of November, 1875, ex-
cept the defendants Annie L. Quina, Philip G. Caro and
John G. Caro, who are grandchildren of said Mary A.
Caro, being children of her son Philip Caro, deceased,
and the defendant Gregory Quina, who is the husband of
Annie L. Quina; that they are all over the age of twenty-
one years and that complainants and defendants are co-
parceners in the above described real estate, each of them
being entitled to one-tenth part thereof, except Annie L.
Quina, Philip G. Caro and John G. Caro, who are each en-
titled to one-third of one-tenth thereof; that no other
person or persons are entitled to any part thereof or claim
therein; that complainants are desirous that a partition
of said premises shall be made among the said several
parties seized of and entitled thereto. The bill waives an-
swer under oath, and prays for petition of the said prem-
ises, for general relief and for subpoena.   The defendants
answered the bill admitting the relationship between the
parties as alleged, but deny that the complainants and de-
fendants are coparceners in the real estate described in
the bill, or that the complainants or defendants or either
of them are entitled to any proportionate share or quanity

in the same, or are entitled to a partition thereof, because, as defendants aver, the said Mary A. Caro was the owner in fee simple of the property described in the bill, and prior to her death she made a will by which she devised the said property to two of the defendants, viz: Florida N. Caro and Georgia A. Caro, which said will remained unrevoked at the time of her death, and has been duly admitted to probate since her death in the county judge's court of Escambia County. By the written stipulations and agreements of the parties, and the evidence taken before a master the following facts were established: Mary A. Caro, widow of Philip A. Caro, shortly after his decease, built a dwelling house on the real estate in dispute and removed thereto with her children who were not then married. She owned the land in fee, and made it her home and place of actual residence for many years prior to her death, and died there. As her children married they established homes for themselves elsewhere. The defendants Georgia A. Caro and Florida N. Caro were her daughters and continuously resided with her, making her home their home, they having no other home or dwelling place, and resided with her at the time of her death. Their mother paid for and supplied the food for the household. Georgia acted as nurse for her mother, who was in feeble health for several years before her death, and attended to her personal wants generally. Florida attended exclusively to the duties of keeping house, and to her mother's outside business affairs. They were both continuously members of their mother's family and household. Both of them were of age and had been for several years prior to their mother's death, and both of them by sewing earned enough money to supply all of their wants except their food which they ate at their mother's table. Both of them

were continuously under the protection of their mother's roof-tree and family fireside.

The Circuit Judge upon the bill, answer and evidence rendered a final decree adjudging that the real estate in question was lawfully devised to the said Florida N. Caro and Georgia A. Caro, and that the complainants were not entitled to partition thereof, and dismissing the bill at the cost of the complainants. From this decree the complainants have appealed to this court, assigning the said decree as error.

The Circuit Judge erred in making the decree appealed from. The facts in the case are substantially on all fours with the facts in the case of DeCottes v. Clarkson, 43 Fla. 1, 29 South. Rep. 442, in which it was held that the widowed mother in that case was the head of a family at the time of her death, within the meaning of section 1 of Article X of the constitution, and, having children in being, that she could not devise her homestead by will. That case is decisive of this one, and we consequently hold that under the facts in this case Mary A. Caro was the head of a family, within the meaning of said section 1 of Article X of the Constitution of Florida of 1885, and that having children *in esse* at the time of her death, her will, in so far as it undertook to devise her homestead to two of her children to the exclusion of the others, was inoperative and void, and that the complainants were entitled to partition and division among her heirs at law of the real estate constituting such homestead.

The decree appealed from is reversed with directions for such further proceedings in the cause as may be conformable to equity practice and not inconsistent with this opinion. The appellees to be taxed with the costs of this appeal.

MAXWELL, J., took no part in the decision of this cause.

CARTER, J. Concurring.

The conclusion reached in DeCottes v. Clarkson, 43 Fla. 1, 29 South. Rep. 442, to the effect that an unmarried holder with children cannot dispose of his or her homestead by will, is thought by counsel for appellees in this case to be erroneous. In that case the question is not discussed further than to say that it is settled law in this State, not denied by counsel in that case. In the present case the opinion prepared by the Chief-Justice merely follows the former decision, without discussing the question at all, and in view of the very able brief of the counsel for appellees, based largely upon the written opinion of the Circuit Judge, I deem it proper to discuss the question more at length. In Walker v. Redding, 40 Fla. 124, 23 South. Rep. 565, it is broadly stated that "under Article X constitution of 1885, only those who are without children can dispose of their homesteads by will." Under the constitution of 1868, it was uniformly held that the homestead could not be disposed of by will (Wilson v. Fridenburg, 19 Fla. 461; 21 Fla. 386, and Brokaw v. McDougall, 20 Fla. 212), but in all the cases decided under either constitution, except DeCottes v. Clarkson, the testator left a wife and children, and this fact, it is thought, makes those decisions inapplicable to the present question, leaving it to rest upon DeCottes v. Clarkson alone. So much of the provisions of Art. X, constitution of 1885, as bear upon the question to be decided, reads as follows: "Sec. 1. A homestead to the extent of 160 acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, together with $1,000 worth of personal prop-

Caro et al. y. Caro et al.—Opinion of Court.

erty, and the improvements on the real estate shall be exempt from forced sale under process of any court, and the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists.

Sec. 2.   The exemptions provided for in section 1 shall inure to the widow and heirs of the party entitled to such exemption.

Sec. 4.   Nothing in this Article shall be construed to prevent the holder of a homestead from alienating his or her homestead so exempted by deed or mortgage duly executed by himself or herself and by husband and wife, if such relation exists; nor, if the holder be without children, to prevent him or her from disposing of his or her homestead by will, in a manner prescribed by law."

The contention for appellees is, that the restrictive provisions of Art. X of the constitution apply only to cases where the owner of the homestead is a married person. The argument to sustain this contention proceeds upon the theory that the constitution does not cast upon the widow and heir an estate in the homestead, nor operate as a statute of descents as to such property; that the right to alienate the homestead is not derived from the constitution, but that the latter merely places restrictions upon the antecedent power of alienation incident to the ownership of the property; that therefore the 2nd section has no bearing and is not to be considered in determining whether the owner can dispose of the homestead by will; that the only restraint upon alienation is that embraced in the language "the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists," found in the first section; that this restriction applies only to married owners, and that it applies to wills as well as to present conveyances; that the

14  S. C.

4th section does not further restrict alienation, but merely enunciates a rule of construction to be applied to the provision against alienation found in the first section; that as applied to wills it authorizes a married owner, without children, to dispose of the homestead by will, without the joint consent of husband or wife which would otherwise be required by section one. If this argument be sound, I think the result follows as a logical conclusion, that the unmarried owner of a homestead can dispose of it by will, whether there be children or not. The argument is plausible, but its subtlety and ingenious refinement must fall before the clear and obvious intent pervading the language of Art. X. No one can read this Article without being at once impressed with the view that under it the homestead can not be aliened except by deed or mortgage duly executed by the owner and by husband or wife if the relation of marriage exists, and that it can not be disposed of by will if the holder has children. This intention stands out so bold and clear that he who runs may read, and it was, without doubt, so understood by the people in adopting the constitution. The object of construction as applied to a written constitution is to give effect to the intention of the people in adopting it (Cooley's Constitutional Limitations, 6th ed. p. 69), and when that intention is ascertained it must be declared, without regard to technical rules of construction. Ibid. p. 70.

The constitution of 1885 is a revision of that of 1868. The homestead article of the former is a revision of a similar article in the latter, and we must look to the former provisions and their construction in determining the meaning of the revision. The first section of the homestead article of the constitution of 1868, so far as applicable to the question now under discussion, was the same

as the first section of the present constitution, except the words "exempt from forced sale under process of any court" in the latter, were substituted for the words "exempted from forced sale under any process of law" in the former , which change of language has no bearing upon the question now being considered.   The third section of the former constitution provided that "the exemptions provided for in section 1 of this article shall accrue to the heirs of the party having enjoyed or taken the benefit of such exemption," while the language of the constitution of 1885 is that "the exemptions provided for in section 1 shall inure to the widow and heirs of the party entitled to such exemptions."   In the former constitution no language was found similar to the 4th section of the present one.  In Wilson v. Fridenburg, 19 Fla. 461, the first case bearing on the question of testamentary disposition of the homestead, it was said that the homestead was not subject to such disposition, because if it were then the devisees—in that case the *wife* and *children*—would take in subordination to the creditors of the husband, whereas the constitution protected the homestead from creditors after his death by continuing the exemption thereof to the heirs.  It was also said "the authorities in point are that the husband can not devise the homestead. 'The existence of such a right in the wife and children,' in this case *in the children*, 'is clearly incompatible with the exercise of such a power over it by him,' 100 Mass. 234, 37 Vt. 419, 25 Tex. 72. Thomp. on Homesteads, sec. 544." It is nowhere suggested in that case that the will was not executed with the "joint consent of husband and wife," nor that the clause in section 1 of the constitution prohibiting alienation without such joint consent operated to prevent alienation by will.  On the contrary, it is

perfectly clear from the language used, and the authorities cited to sustain the proposition asserted, that the prohibition. upon alienation· by will was found in the language of the 3rd section to the effect that the exemption provided for in section 1 should accrue to the heirs of the party having enjoyed or taken the benefit of such exemption. This was the constitutional right existing, *in the children* in that case, that was clearly incompatible with the power to devise the homestead. The authorities cited show ·clearly that the decision was based upon implied prohibitions in the 3rd section, and not upon the clause in the 1st section regarding alienations by the joint consent of husband and wife, and those prohibitions applied to every holder of a homestead whether married or unmarried and regardless of children. A brief reference to the authorities cited will demonstrate the correctness of my interpretation of the decision. In the Massachusetts case the statute provided that the homestead, occupied and owned by a householder having a family, should exempted to the value of $800 from sale or levy on execution; that no release or waiver of such exemption should be valid unless by deed, and no conveyance thereof by the husband valid, without his wife's joining therein; and that such exemtpion should continue after his death for the benefit of his widow and children, some one of them continuing to occupy the homestead until the coming of age of the youngest child and the death of the widow. The court said that the power of the husband to terminate this freehold with his life by disposing of the land in his will is inconsistent with the spirit and intent of the statute, as manifested in the clauses declaring that no release or waiver except by deed, and no deed from the husband alone without his wife should be valid in law, and

that the exemption should continue after his death for the benefit of his widow and children. In the Vermont case it is said "the intent of the homestead act is to create a home for the poor debtor and his family which shall not be liable for his debts, and which, upon the death of the husband, shall descend to the widow and minor children. The spirit of the act and all its provisions indicate that it was intended that the husband should not have the power by will to devise it away from his wife and minor children. He can not alienate or mortgage it without the consent of the wife. If he die leaving a wife and children, it shall vest in them free form his debts." In the Texas case it is said "the order setting apart the homestead for the use of the widow and children is not complained of. It was certainly proper irrespective of the disposition of the fee by the will. The statute reuires the court to set aside the homestead for the use of the widow and children at the first term of the court after the inventory and list of the claims have been returned which may be before the solvency of the estate has been judicially ascertained. Though it may be subject to final partition and distribution, it is not assets in the hands of the administrator, but the use of it as a homestead is reserved to the family during the period of administration." Judge THOMPSON, in section 540 of his work on Homesteads and Exemptions, says: "the homestead exemption would be deprived of the feature which chiefly recommends it to favor, if upon the death of the head of the family, it should be withheld from his widow and children and subjected to administration for the payment of his debts." After referring to the statutes of the various States providing for the transmission of the homestead upon the death of the head of the family, he says in section 544:

"the right thus secured to the widow and orphan children of the owner of a homestead would in some cases be rendered nugatory if he could .deprive them of it by testamentary disposition. The existence of such a right in them is clearly incompatible with the exercise of such a power over it by him." The last clause of this language of Judge THOMPSON is quoted approvingly, and, indeed, is the basis of the decision of this court in the Wilson-Fridenburg case. It will thus be seen that the decision of this court was not based alone upon the clause against alienation in the first section, but more directly upon the third section which continued the exemption to the heirs upon the death of the head·of the family. This conclusion is supported by reason as well as by authority. Schneider v. Hoffman, 9 Mo. App. 280; Bell v. Bell, 84 Ala. 64, South. Rep. 189; Waples on Homesteads, pp. 446-456; 1 Underhill on Wills, Sec. 59. In McCrae v. McCrae, 103 Tenn. 719, 54 S. W. Rep. 979, the constitutional provision construed was "a homestead in the possession of each head of a family * * * shall be exempt during the life of such head of a family to inure to the benefit of the widow, and shall be exempt during the minority of their children occupying the same." The word "inure" is also used in our constitution of 1885. The court said: "this constitutional clause clearly preserves the homestead upon the death of the husband primarily to the widow, so that, though she have minor children, her sole conveyance will effectually prevent them from asserting any claim or interest in it as against her alienee. But it also recognizes a right in the minors which, there being no widow at the death of the head of the family, is operative at once in their favor, and they become the immediate and complete beneficiaries of this clause." Again it is said in that opinion "that the testator in his lifetime, after the

Caro et al. v. Caro et al,—Opinion of Court

death of his wife, could have aliened this property so as to have deprived his minor children of a homestead in it, was settled in Coldwell v. Hayes, 1 Shannon Cases, 601. But it does not follow that this could be done by the execution of a will. The power of alienation under the conditions stated, if exercised by deed, would have operated at once as a transmutation of title and this would have been a complete act during the life of the maker, but it is otherwise with a will. This speaks, whatever its date may be, only from the death of the testator, and in the present case taking effect then, it encountered the provision of the constitution which creates a homestead in the minors and necessarily yields to it." See, also, Schneider v. Hoffman, *supra.*

It may be contended, however, that the remarks of Chief-Justice RANDALL, in Brokaw v. McDougall, 20 Fla. 212, text 225, to the effect that in Wilson v. Fridenburg, it was "held that the language of the Article, the homestead 'shall not be alienable without the joint consent of husband and wife, when that relation exists,' operated to prevent any alienation or other testamentary disposition of the homestead by such head of a family who may die leaving a widow and children," shows that the real ground of the decision in the case referred to was not as I have interpreted it, but was based upon the alienation clause in the first section. In that case the remark was incidentally made concerning a matter not involved in the case then before the court, as neither party was contending that the will of the homestead in that case was valid, nor that the decision in the former case upon that subject was wrong. The court was asked to reconsider the former decision as to the statuts of the widow, but not as to the power to devise the homestead. In the sub-

sequent decision (Wilson v. Fridenburg, 21 Fla. 386,) the court, speaking of the homestead, says, text page 389, "it was the homestead of the testator. It was beyond his power to dispose of it by will. If he owed no debts, his heirs at law were entitled to it by the laws of descent. If he owed debts, they were entitled to it by the laws of descent, freed from the debts by force of the constitutional provision of homestead exemption," citing Brokaw v. McDougall, 20 Fla. 212; Wilson v. Fridenburg, 19 Fla. 461, and Constitution Art. IX, sections 1 and 3. The third section of Article IX constitution referred to was the provision that the exemptions should accrue to the heirs, showing clearly that the court recognized that provision as entering into the question as to the power to dispose of the homestead by will. The text-books so construe the Florida decisions, and I think they are right. Waples on Homestead and Exemptions, p. 448. Not only were the decisions of this court, as I have shown, based upon the 3rd and not the 1st section of Art. IX constitution of 1868, but they could not have been based upon the 1st section, because the language "the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists," had no application to testamentary dispositions, as I shall now demonstrate. I do not deny that the word *alienable* may be broad enough to include dispositions by will when not otherwise restrained by the context, but where that word was used in the first section with respect to the joint consent of husband and wife, and following this section was another providing for the continuance of the exemption in the heirs of the head of the family from and after his death, as was the case here, I do not think it can be said that the word "alienable" was intended to embrace testamentary dispositions. In

Kansas the constitutional homestead provision was very similar to the 1st section of our homestead provision. It read "a homestead to the extent of 160 acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempt from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists." It was held in a well reasoned opinion rendered by VALENTINE, J., that a will was not an alienation within the meaning of the constitutional provision quoted, and therefore that the married owner of a homestead could without the consent of his or her husband or wife, dispose of the homestead by will. Vining v. Willis, 40 Kan. 609, 20 Pac. Rep. 232. In South Carolina, in construing a statute that "no right of homestead shall exist or be allowed in any property real or personal aliened or mortgaged," it was held that property devised by a testator was not "aliened," within the meaning of the statute, so as to deprive the widow of her right to exemption therein. See, also, the meaning given to the word "aleniation" in Turner v. Bennett, 70 Ill. 263. Although in many States there are provisions against alienation except by the joint consent of husband and wife, I have been unable to find a case holding that a will was an alienation within the meaning of such provisions. It can not be supposed that the constitution intends to treat a will as an alienation, for if so it would require a joint will on the part of husband and wife to convey the homestead. A will is inherently ambulatory, and does not take effect until the death of the testator. It is revocable at any time while the party is alive. If the wife gave her consent by will she could revoke it at any time either before or after the death

of her husband, and her consent given by the will would never become operative until her death. In order to render a will valid, requiring the joint consent of husband and wife, the parties would have to join in death as well as in the will.

The first section of the old as well as the new constitution deals with the homestead and alienations thereof during the lifetime of the owner, but its transmission on his death is specially dealt with in subsequent sections. By the old constitution the exemption "accrues to the heirs" upon the death of the party, and by the new it "inures to the widow and heirs" upon his death. Neither provision regulates the descent of the property, but it does regulate and provide for the continuance of the exemption after the owner's death. The provisions are based upon the theory that there are and will be statutes regulating the descent of property, designating the persons who shall be heirs and the interests they shall inherit, and regulating the interest which the widow shall take in a decedent's property, whether dower or otherwise. It casts the exemption upon the widow and upon whomsoever the legislature shall have designated as heirs of the party, and thus, by implication, excludes the idea that the party may by will designate other persons to succeed to the property upon his death. As the constitution casts the exemption upon the widow and heirs, it is absolutely essential, in order that they may enjoy this constitutional right, that the title of the property shall descend to or vest in them. As was said by Judge WESTCOTT in the Wilson-Fridenburg case, if we admit the power to devise the homestead it will be subject to debts in the hands of the devisees, even though the devisees may be the widow and those who would have taken by inheritance in the ab-

sence of the will. In other words, the owner might, by ex-
ecuting a will to take effect at his death, render the home-
stead liable to his debts in the face of the plain language
of the constitution that the exemption enjoyed by him
shall inure to the widow and heirs. As these subsequent
sections deal expressly with the transmission of the ex-
emption at the owner's death, it is very clear that the pro-
vision respecting alienation in the first section has refer-
ence to alienations to become effective in the owner's life-
time. Both were in mind in framing the article, and both
are provided for in separate sections.

This brings me to a consideration of section 4 of the
new constitution which is a new provision not found in
the old. It is in the nature of an interpretation clause,
but it contains limitations upon the power of alienation
by unmarried owners, and certain limitations upon the
power of alienation by married owners mentioned in the
first section, and an interpretation of the restrictions
upon the power of testamentary disposition found in sec-
tion 2. This section is framed upon the theory that there
is somewhere in the Article language that is susceptible
of being construed as prohibiting married as well as un-
married owners from making deeds, mortgages or wills
of their homesteads in cases not intended, or of enabling
them to make them in cases intended to be prohibited.
And just here I will say that the language of this section
excludes the idea that it was intended merely to enlarge
the power of alienation restricted by the first section so
as to permit a married owner to alienate by will the home-
stead without the joint consent of husband or wife, be-
cause it deals with the subject of alienations and wills by
married and unmarried owners in separate clauses, show-
ing clearly that the framers did not have in mind simply

wills of married owners. It provides, that "nothing in this Article," not section one alone, "shall be construed to prevent the holder of a homestead," not the married holder, "from alienating"—the same word used in section one —"his or her homestead so exempted by deed or mortgage duly executed by himself or herself," clearly applicable only to an unmarried holder, "and by husband and wife if such relations exists," applicable only to married holders, "nor if the holder," not the married holder, but the holder whether married or unmarried, "be without children to prevent him or her from disposing of"—not alienating—"his or her homestead by will, in a manner prescribed by law," not without the joint consent required by the first section. We notice here the clear distinction drawn between an *alienation,* such as is mentioned in the first section, and a *disposition by will,* showing that the words alienable and alienated were not used in the sense of devisable or devised. If the only limitation upon the power to alienate was that found in section one, that "the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists," and this limitation was applicable to wills, and the only purpose of section four was as contended to permit childless married owners to devise the property without the joint consent of husband and wife, the framers of section four certainly used a great many useless and meaningless words to accomplish that purpose. Constitutions are supposed to have been framed with care, and the words used to have been carefully and deliberately selected. Cooley's Constitutional Limitations (6th ed.), 72. The construction contended for would not only permit married persons without children to devise their homesteads without the joint consent of the husband or wife, but would enable married

persons with children to dispose of the homestead by will, if done by the joint consent of husband and wife, while the clear intent of the language used is to restrict the power of alienation by devise to persons, married or unmarried, who have *no children*. It sems to me that the language of section four indicates an intention more extensive than that attributed to it by counsel. It means to restrain the power of alienation either by a married or an unmarried owner to an alienation by deed or mortgage duly executed by such owner, and by the husband or wife if that relation exists. It means to restrain the disposition by will to childless owners, whether married or unmarried, and in order to accomplish these results it enacts a rule of interpretation.

There is nothing in these conclusions in conflict with the decision in Godwin v. King, 31 Fla. 525, 13 South. Rep. 108. In that case it was held that the constitution does not undertake to regulate the descent of property, but simply exempts a certain portion of the estate of the head of the family from forced sale under process of any court for the debts of such head of a family, and to continue this exemption after his death to his widow and heirs; that the respective shares of the widow and heirs are not determined by the homestead article, but are ascertained under the law regulating dower and the descent of property in force in this State. This conclusion does not conflict with the views herein expressed.

The only other case I deem it necessary to refer to is Hinson v. Booth, 39 Fla. 333, 22 South. Rep. 687. It was there held that there were no restrictions in the constitution against the power of the holder of exempt personal property to dispose of it by will, but in reaching this conclusion it was expressly admitted that there was in the

homestead article a prohibition against the power to devise the homestead by a holder with children. The view that the disposition of the exempt personal property by will was not restricted, was reached by the application of the maxim *expressio unius est exclusio alterius*. It was thought that the express restrictions in sections 1 and 4, as to real estate, negatived the idea that any were intended as to personal property, either by the owner in his lifetime, or by will to take effect at his death. There is, therefore, no necessary conflict between my views in this case and those there expressed. On the contrary, it is there admitted that the real estate is not subject to testamentary disposition where the holder has children.