# DECISIONS

OF THE

# Supreme Court of Florida.

## JANUARY TERM, 1901.

◆

GEORGE A. DeCOTTES, MARY A. DeCOTTES, EDWARD H. HOPKINS AND ESTELLE HOPKINS, APPELLANTS, VS. WALTER B. CLARKSON, ROSA CLARKSON, HATTIE P. MOODY AND MARGARET C. FAIRLIE, APPELLEES.

43     1|
44   785|
p45  207|
e45  208|
48   210
48   271|
43     1|
51   625|

1. Where no objection is made in any manner to the jurisdiction of a court of chancery in a partition suit, and the case is regularly brought to final hearing and decree on bill, answer, and testimony, the appellate court will not consider objections as to jurisdiction raised for the first time on appeal, where the record fails to disclose an entire absence of jurisdiction over the subject-matter.

2. Who is the head of a family, within the meaning of section 1,' Article X, of the constitution, exempting homesteads from forced sale, must be ascertained from the facts of each case; and there is no invariable test, based solely upon dependence, and especially legal dependence.

3. At the time of her husband's death, Mrs M. was the owner of a lot of land in an incorporated city, containing less than one-half acre, upon which there was a dwelling house, and in which she resided with her husband and two unmarried daughters; there being two other married daughters living away from the family residence. The husband died in 1887, and Mrs. M., the widow, and the two unmarried daughters continued to reside in the same house until the death of Mrs. M., in 1894. One of the daughters married in 1891, and thereafter she and her husband paid board, and were in no way supported by the mother. The

43 Fla. 2

other daughter was vigorous and healthy, capable of attending to household affairs, and did assist in attending to them, besides assisting her mother in connection with the latter's estate, that amounted in value to some sixty thousand dollars, all this was done out of a sense of filial duty and affection, and there was no agreement about it, or stipulated price to be paid, but this daughter was supported and provided for by her mother as long as she lived. *Held*, that Mrs. M. was the head of a family at the time of her death, within the meaning of section 1, Article X, of the constitution.

4. The word "children," in the fourth section of the tenth article of the constitution, permitting a devise of the homestead when the holder be "without children," has reference to relationship, and there is nothing in the context to authorize a construction restricting it to minor children.

Appeal from the Circuit Court for Duval County.

*Statement.*

Appellants filed a bill in chancery against appellees and one Margaret C. Fairlie, for a partition of lot five (5), block thirty-three (33) old numbering, of the city of Jacksonville, or lot five (5), block eighty-one (81) of the new numbering, said lot being situate at the southeast corner of the intersection of Laura and Monroe streets in said city.

The bill alleged that Mary L. Moody, deceased, during her lifetime and to the time of her death was the head of a family and resided upon the lot described as her homestead; that she died on the 19th day of January, 1894, leaving as her heirs complainants Mary A. De-Cottes and Estelle Hopkins, and the defendants Hattie P. Moody and Rosa Clarkson, and that the title to the said lot descended under the laws of Florida to said heirs as tenants in common, and each was entitled to a one-fourth undivided interest in the same; that on or about the 23rd of July, 1894, Estelle Hopkins and her husband

Edward H. Hopkins mortgaged the one-fourth interest of Estelle in said lot to Margaret C. Fairlie for $2,000.

The defendants Hattie P. Moody and Rosa Clarkson, her husband Walter B. Clarkson joining therein, filed a joint answer, admitting that Mary L. Moody, deceased, during her lifetime was seized and possessed of the lot described in the bill and that she resided in the house situated on the west eighty-two and one-half feet of said lot, but alleged that this part of the lot was completely cut off and separated from the east twenty-two and one-half feet which was under a separate fence, and that upon the east twenty-two and one-half feet and the west thirty feet of lot six (6) block thirty-three (33) there was located a dwelling-house which was occupied by a tenant of the said Mary L. Moody at the time of her death; that the said eastern part of lot five (5) had been cut off from the western portion for many years prior to the death of Mary L. Moody, and during all of said time the dwelling-house had stood upon said lots and had been occupied by tenants of Mrs. Moody (except occasional intervals), who exercised exclusive posession and control over the same. Respondents further answered that they are advised and believe that Mary L. Moody was not the head of a family at the time of her death in the sense in which the allegation is made, and that no part of the said lot five (5) was a homestead within the meaning of the constitution and laws of the State of Florida.

It is alleged that Mary L. Moody acquired said lot five (5) during the life of her husband, Paran Moody, on the 20th day of August, 1886, by deed of conveyance, and that she lived on the said west eighty-two and one-half feet of said lot five (5) with her husband and two daughters, Hattie and Rosa, until the death of her hus-

band in June, 1887, and after his death she continued to live thereon until the time of her death; that after the death of her husband and until the 11th day of November, 1891, Mrs. Moody lived upon said property with her two unmarried daughters Hattie P and Rosa, when Rosa was married to defendant Walter B. Clarkson, and that thereafter she continued to live upon said property with her said daughters and Walter B. Clarkson until the time of her death. It is admitted that Mrs. Moody left surviving her the heirs named in the bill, and it is alleged that Mary A. DeCottes and Estelle Hopkins were married to their respective husbands many years before the death of their mother and from the time of their marriages they lived separate and apart from their mother, and were so living at the time of her death, and had been from the time of their marriages supported by their respective husbands. It is alleged that Rosa Carkson had been supported and maintained by her husband from the time of their marriage, and that Hattie P. Moody was over twenty-one years of age at the time of her father's death (June, 1887), and from that time until her mother's death she was possessed of a strong and vigorous constitution and was not dependent upon her mother for a support; that during all of said time she was fully capable and able to earn her own living, and that although she lived with her mother until her death and had remained with her all the former's life and had been maintained and supported by her mother, yet the services which she rendered her more than compensated her for the food and clothing provided for the daughter. It is also stated that Hattie P. Moody assisted her mother with housekeeping and attended to most things of that kind that were to be done, and that she attended to most

of the details of her mother's business, the latter being possessed of considerable property.

It is also stated that Mary L. Moody was sick, infirm and feeble for six months prior to her death and that during this time Hattie P. had almost complete charge of all of her mother's affairs, and nursed her and constantly attended her in her last illness, and it is alleged that at the time of her death Mary L. Moody had no one dependent upon her for support. It is further alleged that Mary L. Moody died testate and by her will devised to respondents Hattie P. Moody and Rosa Clarkson the said lot five (5) upon which she resided at the time of her death, and that Mary A. DeCottes and Estelle Hopkins have no interest therein which entitles them to maintain a suit for partition. The execution of the mortgage to Margaret Fairlie is admitted, but it is alleged that Estelle Hopkins had no interest in the property to mortgage. It is also further alleged that in addition to said lot five (5), Mary L. Moody owned at the time of her death a large amount of real and personal property, worth some sixty thousand dollars, and that by the provisions of her will all of her property, except the said lot five (5) and the west thirty feet of lot six in block thirty-three, was devised to her said four daughters share and share alike, with cross remainders in the event that any one of them should die without children, the share of Estelle being devised to Hattie P. in trust. It is further stated in the answer that in the event the court determines that Mary L. Moody was the head of a family, and said lot five (5), or any part of it, was her homestead at the time of her death and did not pass to the devisees named in the will, then respondents, Hattie P. Moody and Rosa Clarkson, are entitled in equity to compensation for the loss which they would thereby sustain and

the court would be bound in conscience to sell or sequester the interest devised to Mary A. DeCottes and Estelle Hopkins by said will, and compensate Hattie and Rosa out of the same to an amount equal to one-half of the value of the real property adjudged to be a homestead.

Margaret Fairlie answered admitting the allegations of the bill and alleged that the mortgage to her was duly executed and recorded. She also alleges, upon information and belief, that before the mortgage was executed Hattie P. Moody and Rosa Clarkson and her husband assured the broker acting in behalf of Estelle Hopkins in securing the loan that the latter owned a one-fourth interest in the lot and that they would as an extra inducement to secure the loan endorse the interest coupon notes, and that the eight interest coupon notes were endorsed by Hattie P. Moody and Walter B. Clarkson, and that relying upon the truth of such representations respondent accepted the mortgage.

A general replication was filed to the joint answer of Hattie P. Moody, Rosa and Walter B. Clarkson, and an examiner appointed to take testimony. Upon report of the examiner the court on final hearing, upon the original bill, answers of the defendants and testimony reported, decreed that complainants had no right, title or interest in the property described in the bill to entitle them to partition, and dismissed the bill at complainants' cost. The transcript, upon which the case is considered in consequence of exception to the abstracts, shows that the defendants to the original bill, Hattie P. Moody, Rosa and Walter B. Clarkson, filed a cross-bill against the original complainants, and that a demurrer to the cross-bill was set down for hearing. No disposition, however, was made of the demurrer and the decree

from which ' the appeal is entered was made, as stated, on the original bill, answers thereto and testimony submitted. The necessary statement of the facts will appear in the opinion.

*H. Bisbee and C. D. Rinehart* for Appellants.

*R. H. Liggett* for Appellees.

MABRY, J. (*after stating the facts.*)

Counsel for appellants say in their brief filed in this case that the "bill of complaint through inadvertance prayed for a partition of the whole lot, but the western portion is the only part of the lot sought to be subjected to the partition, and it was so understood at the final hearing in the court below." In view of this statement our decision will be confined to the western eighty-two and one-half feet of lot five (5) in block thirty-three (33). old numbering, of the city of Jacksonville or lot five (5) in block eighty-one (81), new numbering.

Counsel for appellees questions here the jurisdiction of the lower court, and contends that such an adverse possession of title as is disclosed by the joint answer can not be adjudicated by a court of chancery in a partition suit. No objection was made to the jurisdiction of the court by demurrer to the bill or reservation in the answer of any such objection, and the case was brought on for final hearing before the chancellor upon bill, answers and testimony submitted. On the disclosures of this record, in the absence of any such objection in the trial court, we are not properly called on to go into a consideration of the jurisdiction of the court to entertain the suit. Rivas v. Summers, 33 Fla. 539, 15 South, Rep. 319.

There is also some insistence on the part of counsel for appellees that should the court hold the designated western portion of lot five to be the homestead of Mrs. Mary L. Moody, we should further consider the merits of the cross-bill filed in behalf of Hattie P. Moody and Mrs. Clarkson. The object of the cross-bill was to obtain affirmative relief in a certain contingency, and it was based upon the theory suggested in the last clause of the joint answer to the original bill. We have not stated the substance of the cross-bill because the demurrer to it was not passed upon by the chancellor, and the appeal is from the decree on the original bill holding that the complainants had no right, title or interest in lot five that entitled them to partition.

The facts set up in the joint answer are substantially established by the testimony. Paran Moody died in 1887, leaving a wife, Mary L. Moody, and four daughters. Prior to that time Mrs. Moody had acquired the title to the lot in question and was then living with her husband and two daughters, Hattie and Rosa, in a dwelling-house situated on the western portion of the lot. The other two children, Mary A. and Estelle, had married and were living away from the home. All of the children were twenty-one years of age when their father died. Mrs. Moody continued to reside after the death of her husband in the same house with the two daughters, Hattie and Rosa, until she died, but Rosa was married to Walter B. Clarkson in 1891, and thereafter they paid board to Mrs. Moody and she did not support them. Hattie P. Moody was vigorous and healthy and capable of attending to household affairs, besides assisting her mother in transacting business connected with the latter's estate that amounted in value to some sixty thousand dollars. It is shown that Hattie P. Moody did materially assist her

mother in her household and business affairs and nursed and cared for her in her last illness.  All of this was done, it appears, as was natural, out of a sense of filial duty and affection, and there was no agreement about it or stipulated price to be paid for it.  Miss Moody continuously lived with her mother and was provided for and supported by her up to the time of her death.

Our constitution provides, Article X, section 1, that "a homestead to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State  *  *  *  shall be exempt from forced sale under process of any court," and we are of opinion that under the facts of this case Mrs. Mary L. Moody was the head of a family, within the meaning of the constitution, at the time of her death.  If it be conceded that Mrs. Clarkson after her marriage was not a member of Mrs. Moody's family, such can not be said of Hattie P. Moody.  The court has carefully read the numerous cases cited in briefs of counsel, and examined others accessible to us, but it is not deemed necessary that the court should enter upon a discussion of the cases on the subject.  We must obey the constitution when in possession of its meaning, and confining ourselves to the facts of the present case we have no doubt of the correctness of the conclusion reached.

The provision "dependent for support" incorporated into the statute construed in the case of Duval v. Hunt, 34 Fla. 85, 15 South. Rep. 876, is not employed in our constitution in connection with the term "head of a family," and we do not feel authorized to establish an invariable test based solely on dependence, and especially legal dependance.  The true test of who is the head of a family, within the contemplation of our homestead pro-

vision, must be found in the facts and circumstances of the
case. The conclusion reached determines this case. Mrs.
Mary L. Moody permanently residing in this State at the
time of her death on the west eighty-two and one-half
feet of lot five, block thirty-three, in the city of Jackson-
ville, and she died leaving children. It is the settled law of
this State, and not denied in this case, that a homestead is
not the subject of testamentary disposition, unless the
holder be without children; and such property upon the
death of the homesteader descends to his or her heirs at
law. Counsel insist that the word "children" in the fourth
section of the homestead article permitting a devise of
the homestead when the holder be "without children"
means minor children, but it clearly has reference to rela-
tionship and we find nothing in the context to author-
ize such a restrictive meaning. The court erroneously
decreed that the complainants in the original suit, Mary
A. DeCottes and Estelle Hopkins, had no right, title or
interest in the part of the lot in question, and the
decree must, therefore, be reversed. Ordered accordingly.