AARON ADAMS AND JOHN I. HOWE, PARTNERS AS ADAMS &
HOWE, THE FIRST NATIONAL BANK OF FLORIDA, A
CORPORATION, THE WILSON DISTILLING COMPANY, A
CORPORATION, CHARLES M. PFEIFER, JOHN C. ROTH
PACKING COMPANY, A CORPORATION, THOMAS J. MYER
AND MARY O. SHRIVER, PARTNERS AS THOMAS J. MYER
& COMPANY, AND ROBERT F. BRADFORD, *Appellants*, V.
JOHN E. CLARK AND JOHN E. CLARK AND CLARENCE
H. ASHMEAD, AS ADMINISTRATORS. OF THE ESTATE OF
JOHN CLARK, DECEASED, CLARANCE H. ASHMEAD, JR.,
AND LIZZIE CLARK ASHMEAD, WOODS T. WILSON, THE
ATLANTIC, VALDOSTA AND WESTERN RAILWAY COM-
PANY, A CORPORATION, AND JOHN L. DOGGETT AS
GUARDIAN *ad litem* OF ELIZABETH CLARK ASHMEAD
AND CLARENCE H. ASHMEAD, JR., *Appellees.*

HOMESTEAD—HEAD OF FAMILY.

1. John Clark and his wife, Amanda, established their home and
permanent place of abode prior to the year 1855, on two con-
tiguous lots of ground not exceeding in the aggregate the half
of one acre in area located in the city of Jacksonville, and con-
tinuously resided there until the death of both of them. On
this lot were born to them two children, John E. Clark and
Lizzie F. Clark, who resided there with them until both were
married. John E. Clark, the son, married in the year 1876, and
established a home for himself elsewhere. Lizzie F. Clark, the
daughter, in the year 1887, married Clarence H. Ashmead, and,
with the exception of a few months immediately succeeding her
marriage, continuously resided, with her husband and two chil-
dren, at the home of her parents until her death there in 1889.
At the time of her death Lizzie F. Ashmead had two children,
Clarence H. Ashmead, Jr., and Lizzie Clark Ashmead, both
of whom were born at the home of their grand-parents. Clarence
H. Ashmead continued to reside with his wife's parents, with
his two children, for about six months after his wife's death,
when he with his son Clarence H., Jr., removed to a home of
his own elesewhere, the title to which was in him in trust
for his said two children, leaving his daughter Lizzie Clark
Ashmead with their said grand-parents, with the understanding
that they were to rear, educate and support her so long as they

lived, and she continued to live with her grand-parents until both of them died, and resided at their home for several months after the death of her grand-father who was her last surviving grand-parent, when she was taken charge of by her father. This grand-daughter was wholly supported by her grand-father from the date of her mother's death, when she was about one month of age, he paying all of the bills for her clothing, education, musical culture, playthings, etc., and furnishing her board, and he was greatly attached to her. Clarence H. Ashmead, the father of these two children, was an able-bodied man and received a salary in the employ of his father-in-law of $100 per month from a time shortly after his marriage until the death of said father-in-law, and had no other income except this salary, but contributed nothing towards the support, maintenance or education of his daughter Lizzie from the time of her mother's death until after the death of her said grand-father. The grandmother of these two Ashmead children, Mrs. Amanda Clark, devised them by her will a half interest in some real estate in the city of Baltimore and a piece of unimproved real estate in Florida, all of which yielded a small income not exceeding $100 per year. There was no formal or legal adoption by John Clark or his wife of their grand-daughter, Lizzie Clark Ashmead; but, they assumed entire charge, control and support of her from the date of her mother's death, when she was only one month old, with the entire approbation of her father, and with the understanding that they were to care for, educate, rear and support her so long as they lived, and they did in fact do so. Amanda Clark died in February, 1898, and John Clark died in September, 1898. Under these circumstances, *Held*: That Lizzie Clark Ashmead, the grand-daughter, was a member of the family of John Clark at the time of his death, and that the said John Clark was at the time of his death the head of a family residing in this State, and as such was entitled under the constitution to an exemption of the lots comprising his homestead from the payment of his debts.

2. A party to be a member of a family within the meaning of the homestead article of the constitution, must be a member of such family in good faith.

This case was decided by the court *En Banc.*

Appeal from the Circuit Court for Duval county.

## Statement.

The appellants as complainants below filed their bill in equity in the Circuit Court of Duval county against the appellees. The complainants were all creditors of John Clark late of Duval county, deceased, and the main purpose of the bill was to subject to the payment of the claims of said creditors two lots in the city of Jacksonville, Duval county, Florida, that were owned by the said John Clark at the time of his death and upon which he then resided, said two lots being contiguous to each other and containing in the aggregate one-half acre of ground. The bill alleges and the answers admit that said two lots were owned in fee by the said John Clark at the time of his death, and that at such time and for many years before the said John Clark made said lots his home and permanent place of abode; and that at his death he left as his heirs at law his son, the defendant John E. Clark, and two grand-children, the minor defendants Clarence H. Ashmead, Jr., and Lizzie Clark Ashmead, children of the defendant Clarence H. Ashmead and a deceased daughter of the said John Clark; that the said John Clark died intestate, and that the said John E. Clark and Clarence H. Ashmead took out letters of administration on his estate; that upon the theory that the said John Clark was at the time of his death the head of a family, and that said two lots constituted his homestead and were exempt from liability for his debts his said administrators refrained and refused to administer thereon as assets of the estate, but on the contrary, treating it as the homestead of the said John Clark, and claiming that it descended to his heirs at law exempt from his debts, the said heirs at law sold and conveyed their respective rights and interests therein to the defendant Woods T. Wilson for the real use and benefit of the defendant the Atlantic, Valdosta and Western Railway Company, that had taken possession thereof and constructed thereon its railway tracks, etc., and that the aggregate consideration paid to said heirs for said lots was $13,000; that

without said lots the said estate of John Clark, deceased, is insolvent, but that by including them as assets of the estate it would not be insolvent. The bill alleges that the said John Clark had prior to his death ceased to be the head of a family, and was not, therefore, entitled to the exemption of said lots as a homesead. The answers of the defendants on the other hand denied that he had ceased to be the head of a family, and was consequently entitled to the exemption of his homestead. Testimony was taken and submitted, and at the final hearing upon the bill, answers and evidence the chancellor found the equities to be with the defendants and dismissed the bill. From this decree the complainants below have appealed here, and assign the said decree as error.

*H. Liggett, Jno. W. Dodge* and *Fleming & Fleming* for appellants.

*E. J. L'Engle* and *Cooper & Cooper* for appellees.

TAYLOR, C. J. (*after stating the facts*).—Some questions have been raised on the argument here as to the propriety of the pleadings, but deeming these unimportant, we will discuss the case solely upon its merits.

The facts as established by the proofs are substantially as follows: John Clark and his wife Amanda Clark some time prior to the year 1855 established their residence and permanent home upon the lots in question and thereafter continuously resided there with their family until the death of Mrs. Amanda Clark in February, 1898, and John Clark continued to reside there with one of his grand-children and a niece of his until his death in September, 1898. At this home there were born to them two children, the defendant John E. Clark and Lizzie F. Clark, who resided there with them until both were married. John E. Clark married in 1876 and established a home for himself elsewhere. Lizzie F. Clark the daughter married the defendant Clarence H. Ashmead about the year 1887, and with the exception of a few months immediately after her marriage she with her

husband and children resided there with her father and mother until her death about the year 1889. At the time of her death Lizzie F. Ashmead had had two children, the defendants Clarence H. Ashmead, Jr., and Lizzie Clark Ashmead, both of whom were born upon the lots in question at the home of their grand-parents. The defendant Clarence H. Ashmead continued to reside with his wife's parents for about six months after his wife's death, when he with his son Clarence H., Jr., removed to a home of his own elsewhere, the title to which was in him in trust for his said two children, leaving his daughter Lizzie Clark Ashmead with her grand-parents with the understanding that they were to rear, educate and support her so long as they lived, and she continued to live with her grand-parents until both of them died, and resided at their home for several months after her grand-father's death, when she was taken charge of by her father. This grand-daughter was wholly supported by her grand-father from the date of her mother's death, when she was about one month of age, he paying all of the bills for her clothing, education, musical culture, playthings, etc., and he became greatly attached to her, clinging to her as the living link between himself and the only daughter, deceased. Clarence H. Ashmead, the father of these two children, the proof shows, was an able-bodied man and received a salary in the employ of his father-in-law of $100 per month from a time shortly after his marriage until the death of John Clark, and that he had no other income except this salary received from his father-in-law, but contributed nothing towards the support or maintenance of his daughter from the time of her mother's death until after the death of John Clark. About six months before the death of Mrs. Amanda Clark one Miss Annabelle Davis, a niece of John Clark, came down from her parents' home on a farm in New Hampshire on the invitation of her uncle John Clark and took up her residence with him, and continued to reside with them until after the death of John Clark. She was wholly supported by John Clark during her residence here and had

48 Fla—14.

been in large measure supported by him prior to her coming here. She returned to the home of her parents in New Hampshire after John Clark's death. While she resided with them she was considered and treated in all respects as a member of the family, having charge of the housekeeping and taking care of Mrs. Amanda Clark during her sickness, and of John Clark during his illness. There was no formal or legal adoption by John Clark and his wife of their granddaughter Lizzie Clark Ashmead, but, they assumed entire charge, control and support of her from the date of her mother's death when she was only a month old, with the entire approbation of her father, and with the understanding that they were to care for, educate, rear and support her so long as they lived, and they did in fact do so. There was some proof that the grandmother of these two Ashmead children had by her will devised them a half interest in some real estate in Baltimore, and some unimproved real estate in Florida, all of which yielded a small income not exceeding $100 per year.

The sole question for our determination is: Was John Clark at the time of his death, under the facts above stated, the head of a family and as such entitled to an exemption of the lots comprising his homestead from the payment of his debts? Our answer, after careful consideration, is in the affirmative.

The relations thus shown to have existed between John Clark and his granddaughter Lizzie Clark Ashmead at the time of and for years prior to his death, constituted her a member of a family of which the said John Clark was the head, within the meaning of the constitution. Whether the niece, Miss Davis, was also a member of that family it is not necessary to decide and we therefore express no opinion upon that question. *Stodgell v. Jackson,* 111 Ill. App. 256; *Cross v. Benson,* (Kan. 1904), 75 Pac. Rep. 558. See, also, *DeCottes v. Clarkson,* 43 Fla. 1, 29 South. Rep. 442; *Caro v. Caro,* 45 Fla. 203, 34 South. Rep. 309.

It has been suggested here that inasmuch as our constitution exempts the homestead to the head of the family and to his widow and *heirs at law,* that no one can be a unit comprised in the term *family* but one who is an *heir at law* of the head of such family. However this may be the question does not arise in this case, since the granddaughter, Elizabeth Clark Ashmead, whom we hold to have been a member of the family of John Clark at his death, was in fact one of his heirs at law. Of course a party to be a member of a family must be such in good faith. But in this case there can be no question of *mala fides* in the claim to membership by the granddaughter Elizabeth Clark Ashmead in the family of John Clark, since he, nearly ten years prior to the death of his wife, Amanda Clark, adopted her as a member of his family when she was only a month old, and when there was no reason or necessity for any fraudulent composition of a family, as John Clark and his then living wife undoubtedly constituted a family without the addition of any other member. *Miller v. Finegan,* 26 Fla. 29, 7 South. Rep. 140, S. C. 6 L. R. A. 813.

As bearing upon the principles herein announced we cite the following cases: *Enders v. Enders,* 164 Pa. St. 266, 30 Atl. Rep. 129; *Clark v. Bayer,* 32 Ohio St. 299, S. C. 30 Am. Rep. 593; *Brien ex parte,* 2 Tenn. Chy. 33; *Barney v. Leeds,* 51 N. H. 253; *Hebert v. Mayer,* 48 La. Ann. 938, 20 South. Rep. 170; *American National Bank of Austin, Texas, v. Cruger,* 31 Tex. Civ. App. 17, 71 S. W. Rep. 784; *Arnold v. Waltz,* 53 Iowa 706, 6 N. W. Rep. 40, S. C. 36 Am. Rep, 248; *Bosquett v. Hall,* 90 Ky. 566, 13 S. W. Rep. 244; *Holloway v. Holloway,* 86 Ga. 576, 12 S. E. Rep. 943, S. C. 22 Am. St. Rep. 484; *Wade v. Jones,* 20 Mo. 75, S. C. 61 Am. Dec. 584; *Brooks v. Collins,* 11 Bush (Ky.) 622; *Connaughton v. Sands,* 32 Wis. 387; *McMurray v. Shuck,* 6 Bush (Ky). 111; *Wolfe v. Buckley,* 52 Tex.. 641; *Fant v. Gist,* 36 S. C. 576, 15 S. E. Rep. 721; *Capek v. Kropik,* 129 Ill. 509, 21 N. E. Rep. 836; *Smith v. Wright,* 13 Tex. Civ. App. 480, 36 S. W. Rep. 324; *Moyer v. Drummond,* 32 S. C.

165, 10 S. E. Rep. 952, S. C. 7 L. R. A. 747; *Broyles v. Cox*, 153 Mo. 242, 54 S. W. Rep. 488; *Arnold v. Waltz*, 53 Iowa 706, 6 N. W. Rep. 40.

The decree of the Circuit Court appealed from herein is hereby affirmed at the cost of the appellants.

HOCKER, WHITFIELD, SHACKLEFORD and CARTER, JJ., concur.

COCKRELL, J., being disqualified, took no part in the consideration of this case.