HANNAH HILL, HENRY HILL AND 'ADRIANNA HILL FOR HERSELF AND AS NEXT FRIEND OF HER MINOR CHILDREN, BERTHA, ALMA, PALLIE, LUCILE, MATTIE, NAPOLEON, PICOLA AND JOE HILL, *Appellants*, v. FIRST NATIONAL BANK OF MARIANNA AND H. A. BOWLES AS SHERIFF OF JACKSON COUNTY, FLORIDA, *Appellees.*

Opinion Filed May 16, 1917.

1. The head of a family residing in this State is entitled to an exemption under the constitution of whatever undivided in-

terest he or she may have in the lands of which he or she may be in possession and living upon to the extent designated in the constitution.

2. Special replications in chancery proceedings have been discontinued in this State except by leave of the court for cause shown.

3. What constitutes being the head of a family within the meaning of the constitutional provisions exempting property from forced sale under process of any court is a question depending upon the facts and circumstances of each case. A witness should not be permitted whether one is or is not the head of a family, but his testimony should be confined to the facts and circumstances which are deemed to establish that status.

4. Possession of land is a sufficient interest to cause the exemption provided for under the constitution to attach, when the possession is held by the head of a family with the consent and upon the agreement of the owner of the title.

5. Upon the death of the head of a family residing in this State, his interest in the homestead property descends to his heirs free from any liability for his debts.

6. An answer in chancery to a bill to restrain the forced sale of a homestead, which merely avers that the land had been divided into lots by the head of the family with the intention of dividing it between the children and grand-children, constitutes no defence to the bill.

Appeal from Circuit Court for Jackson County, Cephas L. Wilson, Judge.

Decree reversed.

*D. L. McKinnon,* for Appellants;

*Paul Carter,* for Appellees.

ELLIS, J.—A suit in equity was begun by appellants in the Circuit Court for Jackson County against the appellees for an injunction against the sale, under judgment and execution, of a certain tract of eighty acres of land in that county, claimed by the appellants, who were the complainants below, to be the homestead of Hannah Hill.

The bill in substance alleges that Hannah Hill and two of her sons, John and Edward, in 1901 acquired by purchase eighty acres of land in Jackson County described as the E. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ of Sec. 8 T. 4 N. R. 10 W. That they became tenants in common each seized of an undivided one-third interest in the land; that they immediately went into actual possession of the land and have ever since lived thereon. In 1908 they conveyed one acre of this tract to another son of Hannah, named Henry, who immediately took possession, improved the land and has since lived on it; that John Hill died on the 27th day of June, 1915, without wife, children or their descendants; that when John died he was the head of a family consisting of his mother and the children of a deceased sister for whom he provided a home on the place; that having control of his mother's interest in the land he "transacted and supervised all business of the family," and had done so for many years before his death; that in November, 1915, Edward Hill died, leaving a wife and eight children surviving him; that upon the death of John, Hannah assumed the management of the household and became its head; that she provides a home and living for her grandchildren, two of whom are minors, and they all have lived together upon the place described in the bill as their home. The bill alleges that the "Bank" brought suit against Hannah and against H. A. Bowles as administrator of the estate of John Hill, and caused an attachment to be levied

VOL. 73, JANUARY TERM, 1917.        1095

Hill et al. v. First Natl. Bank—Opinion of Court.

upon the lands and a *lis pendens* to be recorded, obtained judgment and execution, and the "Sheriff has levied the execution upon said lands and will proceed to sell the same;" that the "complainant" has claimed the land as her homestead and forbidden the Sheriff to sell it, and demanded that he release it from the levies of the two writs, "but he has refused to do so, and will sell the same under said attachment and/execution unless enjoined from doing so by this court." The bill prays for an injunction against the defendants enjoining them from selling the land under the execution, that the levy of the writs of execution and attachment be cancelled, as also the *lis pendens;* that Hannah Hill be declared to be entitled to the exemption of her two-thirds interest in the lands as the head of a family, and for general relief.

The answer denies the material allegations of the bill, except the purchase of the property by Hannah and her two sons, and the death of the latter in 1915. It admits that the First National Bank of Marianna obtained a judgment against Hannah and the Administrator of the estate of John Hill, and had caused an attachment to be levied upon the land, but denied the record of a *lis pendens'* notice. The answer denied the levy of the execution upon the land in the following words: "These defendants deny that the Sheriff of Jackson County, Florida, has levied an execution upon the said land and will proceed to sell the same under the said levy thereby casting a cloud upon the complainant's title unless enjoined by this court from doing so. And in this connection say that no levy under execution has been made by the Sheriff of Jackson County, Florida, upon the said land under execution." The answer also alleges that the Sheriff has no instruction to levy upon and sell the land under the execution. It also alleges that in September or October, 1915,

Hannah Hill caused the land to be divided into eight lots, and in "September, 1915, she made, executed and delivered her deed to said lots as will more fully appear by reference to a certified copy of said deed" which was attached to the answer as 'Exhibit "A," and made a part of it. It was also alleged that a plat of the said division was attached to the answer as Exhibit "B." This exhibit however does not appear in the record. The deed referred to in the answer was executed by Hannah Hill in favor of Henry Hill, who was made grantee both individually and in a representative capacity. Individually he took under the deed Lot "C" containing ten and three-sevenths acres: As guardian of Hannah, Isaac and Rachel Dickson he took Lot "A," containing six acres; as guardian of Gussie Dickson, Joe and Willie Calloway he took Lot "D," containing ten and three-sevenths acres; as guardian of Brown, Daisy and Hosea Collins, Lot "E," containing the same number of acres, and as Trustee of Lee Hill he took Lot "F," containing the same acreage.

It thus appears that the grantor attempted by this deed to convey her two-thirds interest, which was her entire undivided interest, in only forty-seven and five-sevenths acres of the land which with the one acre already conveyed to Henry Hill·by his mother and two brothers made forty-eight and five-sevenths acres. . The undivided one-third interest of Edward Hill in the entire tract of eighty acres and which upon his death was inherited by his wife and eight children was not affected by this conveyance. Now even if the deed conveys Hannah's undivided two-thirds interest in specific portions of the eighty acre tract described by the lots "A," "C," "D," "E," and "F," she still retains an undivided two-thirds interest in the remaining thirty-one and two-sevenths acres which were not affected by the conveyance. If therefore she was the head

of a family consisting of herself and two infant grand-children,. she was entitled to an exemption under the con-stitution of that interest in that portion of the tract of land unaffected by the conveyance. See Adams v. Clark, 48 Fla. 205, 37 South. Rep. 734; Armour & Co. v. Hul-vey, decided at this term, 74 South. Rep. 212; Pasco v. Harley decided at this term and filed May 5, 1917, in which the court said : "The exemptions from forced sale under process of any court of certain homestead property owned by the head of a family residing in this State have reference to the beneficial interests as *owned* by the head of a family in the specified classes of property." See also Bailey v. D. R. Dunlap Mercantile Co., 138 Ala. 415, 35 South. Rep. 451; King v. Welborn, 83 Mich. 195, 47 N. W. Rep. 106, 9 L. R. A. 803; Milton v. Milton, 63 Fla. 533, 58 South. Rep. 718; Wike Bros. v. Gardner, 179 Ill. 257, 53 N. E. Rep. 613; Brokaw v. Ogle, 170 Ill. 115, 48 N. E. Rep. 394; Clark v. Thias, 173 Mo. 628, 73 S. W. Rep. 616; Meguiar, Helm & Co. v. Burr, 81 Ky. 32; McGrath v. Sinclair, 55 Miss. 89; Jenkins v. Volz, 54 Tex. 636. See also 13 R. C. L. p. 572.

Hannah Hill, one of the complainants, asked leave to file a special replication which admitted the signing of the deed by Hannah Hill, but attacking it as a deed of con-veyance of her interest in the lands described, alleging that it was executed to take effect only at her death as a will, and that her children so understood the purpose of the instrument, and that she was to remain in possession of the land during her life. That she has ever since re-mained in possession of the land controlling the same as she did before the signing of the paper, and that at the time of signing the instrument she was ignorant as to its legal effect, and that she repudiated it as soon as she was

advised concerning its legal effect. The application to file this special replication was denied. Thereupon a general replication was filed, testimony was taken before the Chancellor, who rendered his final decree adjudging the equities to be with the defendants, and dismissing the bill of complaint. The complainants appealed from this decree.

Four of the assignments of error attack the order of the Chancellor denying the complainants leave to file the special replication, and the rulings of the court on the admission of certain evidence offered by the complainants as follows: First, refusing to permit Henry Hill to answer the question as to who was the head of the family; second, refusing to permit him to testify as to his understanding as to when he was to get possession of the land under the deed from his mother; and third, refusing to permit Hannah Hill to testify that in executing the deed she thought she was making a will.

The fifth assignment attacks the ruling of the court in allowing W. H. Milton, over complainant's objection, to testify as to "furnishing supplies to run the place, and money to buy mules from Dillon."

The sixth and last assignment attacks the decree adjudging the equities to be with the defendant.

Section 1875 of the General Statutes of Florida, 1906, Florida Compiled Laws, 1914, provides that: "No special replication to an answer shall be filed but by leave of the court or judge thereof for cause shown." Rule 66 of the Rules of Circuit Courts in Equity Actions forbids the filing of special replications, but provides that if any matter is alleged in the answer which shall make it necessary for the plaintiff to amend his bill, he may have leave to

amend the same with or without the payment of costs as the court or judge may in his discretion direct.

At an early date in chancery practice special replications were discontinued, because of the inconvenience to which they invariably led. A special replication usually led to a rejoinder, which in turn may have required a sur-rejoinder and the court would thus be drawn into the nicety of special pleading as used in the courts of law, which practice is not now tolerated in a court of chancery. The complainant is relieved according to the form of the bill, whatever new matter may be introduced by the defendant's plea or answer. If the complainant conceives from any new matter offered by the defendant's plea or answer that the bill is not properly adapted to his case he may by leave amend the bill, and to that amended bill the defendant if he thinks proper may make such defense as he has. See Mitford & Tyler's Equity Pleading & Practice, 114-413; Storms v. Storms, 1 Edw. Chan. Rep. 358; McClane's Admx. v. Shepherd's Exrx., 21 N. J. Eq. 76; Shaeffer v. Weed, 3 Gilman 511. If the averment of the answer as to the subdivision of the land into eight lots and the execution by Hannah Hill of a deed thereto required an admission or denial, or allegation of matter in avoidance, the rules of practice require that it should have been done by amending the bill, setting up the signing of the deed and alleging the purpose or intention of the parties thereto, or such other matter in explanation of it as existed.

No cause existed for the filing of a special replication and no leave was asked to amend the bill. The order denying leave to file the special replication was correct, and the first assignment of error should fail.

The matter involved in the second assignment of error

was whether the witness J. H. Hill should have been permitted on the direct examination to testify as to who was the head of the family. The question was asked by complainants' solicitor and upon objection by defendant's counsel, the witness was not permitted to answer it; but on cross-examination the defendant's counsel brought out the very matter which upon direct examination he had objected to and the witness answered, referring to his mother, Hannah, that "she is the head of the family." That she is "just tending to everything. Everything goes by her rule" and on re-direct examination he testified without objection that his mother, Hannah, acted as mother to her grand-children and had done so ever since they were born; that she supplied the place with "provisions." The question was properly excluded as calling for an opinion of the witness as to what constitutes the head of a family, and could have affected the Chancellor's judgment not at all even if it had been answered. Upon the question of whether the complainant Hannah Hill was the head of the family, we think the allegations of the bill in that regard are fully sustained by the evidence. So the point is really immaterial.

The third assignment of error rests upon the court's refusal to permit J. H. Hill, who is the same person named as grantee in the deed from Hannah Hill to Henry Hill, to testify as to his possession of the land under the deed. The following questions were propounded and answered, and the objection complained of made and sustained: "Q. What became of the deed? A. The deed we had the last— Q. Well, I know. Do you remember ever having control of that deed? A. No, sir, never had my hands on it except when she signed it. Q. Never delivered to you by anybody else? A. No, sir. Q. Who is in possession of that land now? A. She is in

VOL. 73, JANUARY TERM, 1917.    1101

Hill et al. v. First Natl. Bank—Opinion of Court.

possession of it.  Q.  You were one of the grantees on that deed, were you not?  A.  Yes sir.  Q.  Part of it was made to you?  A.  Yes, sir.  Q.  Was it your understanding at that time that you were not to have any until after her death?  Objected to by the defendant upon the ground that the deed is the best evidence itself.  Objection sustained by the court, to which ruling of the court the complainants excepted at the time.  Q.  I will put it in a different way then.  At the time that you received that deed that was signed by your mother did you expect to go into possession of it or was it your understanding that you were only to get possession after her death?  Objected to by the defendant upon the ground that the deed is the best evidence itself.  Objection sustained by the court, to which ruling of the court the complainants excepted at the time."

This evidence was clearly admissible because as it fully appeared from the testimony of the grantee named in the deed that it had never been delivered to him and that possession of the land had never been surrendered by the grantor to him, his explanation as to when he was to take possession under the instrument, showed clearly that Hannah's possession was held by consent and agreement of the only person who could legally interpose any objection.  Now even if the instrument which Hannah Hill signed was intended by her to be a conveyance of the land, the retention of possession of the land by her and non-delivery of the deed still left in her such an interest as to which the exemption would attach.  But even if she merely retained possession of the land it is of sufficient value to her to have it protected under the homestead law, and it is of no concern whatever to the creditor that another has the superior title.  See Pendleton v. Hooper, 87 Ga. 108, 13 S. E. Rep. 313; Winston v. Hodges, 102

Ala. 304, 13 South. Rep. 528; Cullers v. James, 66 Tex. 494, 1 S. W. Rep. 314; 13 R. C. L. p. 569.

As it appears from the testimony that John Hill was during his lifetime the head of the family, his one-third interest upon his death was inherited by his mother free from any liability for his debts. "The property which his creditors could not take from him during his life, they cannot take from his heirs after his death." See Miller v. Finegan, 26 Fla. 29, 7 South. Rep. 140, 6 L. R. A. 813. The judgment therefore which was obtained by the defendant W. H. Milton, against the administrator of John Hill's estate was not a lien upon the latter's undivided third interest in the land. And as the answer did not aver an abandonment of the homestead by Hannah, the division of the land into lots according to a map with the intention of dividing it between her children and grand-children, but all the while retaining possession of the entire tract as her homestead, constituted no reason why the relief prayed for should not be granted.

The fourth and fifth assignments of error need not be discussed. We think the evidence clearly shows that John Hill during his life was the head of the family. He was the eldest son, his mother was old, his sister's children were minors, infants, their mother dead, the father contributing little or nothing to their support. The situation called for support from the son and uncle, and he responded, as the record shows in a manner that won the respect of his creditor. The obligation resting upon him was a natural one, and he discharged it. When he died the burden, which his mother was willing should be carried upon younger shoulders while he lived, fell into her aged arms and she carried it, doing all she could to save a home for her children and grand-children. The evidence on this point abundantly supports the allegations

of the bill and clearly requires the reversal of the decree.

It is contended that as the answer denied the levy of the execution, and as that denial was not overcome by evidence adduced in behalf of complainant, there was no ground for the relief; but there is no denial of the levy of the attachment  which the complainant has the right to have cancelled.

The decree is reversed.

BROWNE, C. J., and TAYLOR, SHACKLEFORD, and WHITFIELD, JJ., concur.