139 So.2d 704 (1962)
Mrs. V.N. (Minnie Belle) VANDIVER, Appellant,
v.
Larry Patterson VINCENT, a Minor, by His Next Friend, Doris Vincent, and Doris Vincent, Individually, and V.N. Vandiver, Appellees.
No. 2211.
District Court of Appeal of Florida. Second District.
March 28, 1962.
*706 Myers, Heiman & Kaplan, Miami, for appellant.
Patterson & Shankweiler, Fort Lauderdale, for appellees.
FUSSELL, CARROLL W., Associate Judge.
This appeal is from a summary decree entered in favor of a judgment creditor in a suit for declaratory decree brought by such creditor and seeking to have the court determine that certain real and personal property belonging to the appellant was not homestead property and was not exempt from execution issued under appellees' judgment. The summary decree also ruled against appellant on her counter-claim, seeking to have appellees' judgment set aside and declared null and void.
The summary decree was entered, based on opposing affidavit of appellant and her son and on a deposition of appellant appearing in the common law suit between the parties, and in which a judgment was entered against appellant and her former husband, who is not a party to this appeal. The entire record of the common law suit constitutes Volume II of the transcript, and it is indicated in the briefs that the lower court took judicial knowledge of the contents of this record. This is not the proper way to get this evidence and record before the trial court. See Kelley v. Kelley, 75 So.2d 191 (Fla. 1954). There is no indication that the proceedings in this common law record or the deposition taken therein were filed in evidence in the pending case, but no objection has been interposed on this ground by either party. At this juncture, it should be noted that counsel for appellant here did not represent any of the parties in the trial court.
The deposition of the appellant in this common law case indicates that the residence now claimed as a homestead by her was acquired in January, 1955, in the name of appellant and her then husband; that they were separated at that time and that he had returned to Indiana. Appellant and her minor son moved onto the property shortly after it was acquired and have lived in it continuously thereafter as their home. The former husband has never resided on said property, but has remained continuously in Indiana, except for a few short visits to his son. He has remarried and purchased a home in Indiana, where he and his present wife now live.
A final decree of divorce was entered in Indiana between appellant and her husband on June 12, 1957, which decree, among other things, provides that the husband should deed his interest in said residence to his wife; that the custody and control of the minor child should be vested in the wife, and that the husband should pay $25.00 per week for the support of the minor child. It is indicated that the father has paid for the clothes of the minor child and has paid the support money as ordered in the decree, but has failed to convey his interest in said residence to his wife as ordered in the decree. The wife has obtained tax exemption on said residence as a homestead and has considered that she was the sole owner of the residence as provided in the final decree. The purchase price of this residence was $15,000.00; the balance due on the mortgage is $8000.00, and the monthly payments are $83.00. Appellant does not work and has no money or property other than described in her homestead exemption affidavit. The appellant-wife's only income is the $25.00 per week received from the son's father for his support and $30.00 weekly rental for one room, for which she furnishes one meal daily for two and also does their washing and ironing. The son was 17 years of age at the time of the deposition. The final decree of divorce itself does not appear in the record, but, here again, apparently appellant's deposition has *707 been considered and accepted as evidence by the lower court and without objection from any of the parties. Appellant in her opposing affidavit states that she is a resident of Ft. Lauderdale, Florida, and is the sole owner of the residence property; "that said property is the homestead of affiant and affiant resides thereon in continuing communal living with affiant's minor son, Stephen Vandiver, and that affiant is in charge and is the head of the family residing on the property in the State of Florida, and that there is and always has been a family at law and a family in fact residing on said property, and that said property is the homestead of affiant."
The affidavit of the minor, after stating that he is a resident of Ft. Lauderdale, Florida, living on the resident property, states: "That affiant is a minor and resides upon said property with his natural mother, Mrs. V.N. (Minnie Belle) Vandiver, in continuing communal living, and that affiant recognizes his mother as being in charge of said family and being the head thereof, and that affiant recognizes his mother's authority."
The judgment against appellant and her husband was entered July 9, 1958.
Depending upon the final decree of divorce, which is not before us, appellant is either the sole owner of the real property in question, or became the owner of an undivided one-half interest after the entry of the final decree. In either event, if she otherwise qualified, she could claim exemption in whatever interest she has in the property as her homestead. Exemption for homestead as set forth in the Constitution is as follows:
Florida Constitution, Article X, Section 1, F.S.A.:
"A homestead to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, together with one thousand dollars worth of personal property, and the improvements on the real estate, shall be exempt from forced sale under process of any court * * *. The exemption herein provided for in a city or town shall not extend to more improvements or buildings than the residence and business house of the owner * * *."
It is therefore equally as clear that the husband, being a resident of the State of Indiana, and maintaining a wife and home there, could not claim a homestead exemption in this property in Florida.
If we accept the testimony of appellant in her deposition and also her affidavit, and the affidavit of her son, as true, which must be done in considering a motion for summary decree against her, the legal question to be resolved is whether or not, admitting that she does not provide all the support for her minor son, can she claim him as a member of her family and that she is the head of the family.
The question of who is the head of a family and entitled to a homestead exemption is one for which no hard and fast rule has yet been fixed or settled by the courts. It has been most aptly referred to in an excellent treatise on this subject by Crosby and Miller in the Florida Law Review, entitled "Our Legal Chameleon  the Florida Homestead Exemption."
The decisions of our courts rightly entitle this subject to the name "Chameleon".
We can understand this with more reason when we consider that our courts have always held that homestead laws should be construed liberally in the interest of the family and in favor of the person entitled to them. Jetton Lumber Co. v. Hall, 67 Fla. 61, 64, 64 So. 440; 51 L.R.A., N.S., 1121 (1914); West Florida Grocery Co. v. Teutonia Fire Insurance Co. (1917), 74 Fla. 220, 77 So. 209; L.R.A. 1918B, 968; Clark v. Cox, 80 Fla. 63, 85 So. 173 (1920); *708 11 Fla.Law & Prac. 301, Homestead Exem. § 5; 16 Fla.Jur. 275, 276, Homesteads § 5. That they should be carried out in the beneficent spirit in which they were intended, 11 Fla.Law & Prac. 302, Homestead Ex. § 5; Drucker v. Rosenstein, 19 Fla. 191 (1882); Olesky v. Nicholas, 82 So.2d 510 (Fla. 1955). That the exemption laws are intended to preserve for the unfortunate citizen and his family certain things necessary to entitle him to earn a livelihood. Patten Package Co. v. Houser, 102 Fla. 603, 136 So. 353 (1931).
In 11 Fla.Law & Practice, 301, Homestead Exemption § 4, it is said:
"§ 4. Nature and Purpose .
"The homestead was designed for the head of the family, for the family's protection, where it can be sheltered and live beyond the reach of financial reverses or economic misfortune. It should be so applied as to promote the prosperity of the state and to render independent and above want each citizen, to the end that his family may live beyond the reach of creditors who have given credit under such law."
In 16 Fla.Jur. 274, 275, Homesteads § 4, it is said:
"§ 4. Purpose; Public Policy.
"Homestead laws are founded upon considerations of public policy, their purpose being to promote the stability and welfare of the state by encouraging property ownership and independence on the part of the citizen, and by preserving a home where the family may be sheltered and live beyond the reach of economic misfortune. The homestead exemption is designed to benefit not only the head of the household, but also the family, and to protect the family home. The statutes are intended to secure to the householder a home for himself and family, regardless of his financial condition  whether he is solvent or insolvent  without reference to the number of his creditors, and without any special regard to the extent of the estate or title by which the homestead property may be owned. The laws are not based on the principles of equity; nor do they in any way yield thereto; their purpose is to secure the home to the family even at the sacrifice of just demands, the preservation of the home being deemed of paramount importance."
In DeCottes v. Clarkson, 43 Fla. 1, 29 So. 442 (1901), this court said:
"The true test of who is the head of a family, within the contemplation of our homestead provisions, must be found in the circumstances of the case."
In Hillsborough Inv. Co. v. Wilcox, 152 Fla. 889, 13 So.2d 448 (1942), the court said:
"Who is the head of a family within the meaning of the constitution, exempting homesteads from forced sale, must be determined from the facts of each case; there is no rule or invariable test, based solely upon dependence, especially legal dependence."
Also our courts have repeatedly held that Homestead Exemption Laws should not be applied so as to make them an instrument of fraud, or an imposition on creditors, nor as a means to escape honest debts. Jetton Lumber Co. v. Hall, supra; Clark v. Cox, supra; Milton v. Milton, 63 Fla. 533, 58 So. 718 (1912); Hillsborough Inv. Co. v. Wilcox, supra.
Possibly a perfect illustration of a head of a family entitled to the homestead exemption under Article X, Section 1 of the Florida Constitution, would be a man who lived on a farm in the country containing 160 or less contiguous acres, who was married and had a wife and children, who were dependent on him for a living and for whom he furnished their entire support out of the operation of the homestead farm.
*709 However, a married woman has been held to be such a head of the family. Bigelow v. Dumphe, 143 Fla. 603, 197 So. 328; Stephens v. Campbell, 70 So.2d 579 (Fla. 1954).
Also a single person. Hill v. First Nat. Bank of Marianna (1917) 73 Fla. 1092, 75 So. 614.
It is not necessary that any dependent reside with the head of the family on the homestead property. Osceola Fert. Co. v. Sauls, 98 Fla. 339, 123 So. 780 (1929); Lockhart v. Sasser, 156 Fla. 339, 22 So.2d 763 (1945); Brogdon v. McBride, 75 So.2d 770 (1954). But if not, the head of the family must not only be obligated to, but must actually support such dependent. Anderson v. Anderson, Fla., 44 So.2d 652.
It is not necessary that the head of the family furnish all of the support. Hillsborough Inv. Co. v. Cox, supra; Caro v. Caro (1903) 45 Fla. 203, 34 So. 309.
It is not necessary that the head of the family have a legal obligation to support, as moral obligation is sufficient. Hill v. First Nat. Bank (1917) 73 Fla. 1092, 75 So. 614; Adams v. Clark (1904) 48 Fla. 205, 37 So. 734.
The dependents do not have to be under age. DeCottes v. Clarkson, supra; Caro v. Caro, supra; Beck v. Wylie, 60 So.2d 190 (Fla. 1952).
The dependent does not have to reside in the State of Florida. Larsen v. Austin, 54 So.2d 63 (Fla. 1951).
Neither the head of the family nor the dependents have to reside on the property all the time, so long as they leave temporarily or with intention to return. Hillsborough Inv. Co. v. Wilcox, supra; Collins v. Collins, 150 Fla. 734, 7 So.2d 443 (1942); Saint Gaudens v. Bull, 74 So.2d 693 (Fla. 1954); L'Engle v. Forbes, 81 So.2d 214 (Fla. 1955); Olesky v. Nicholas, 82 So.2d 510 (Fla. 1955).
There are many other variances from the customary definition of a head of a family entitled to a homestead exemption, all of which emphasize the fact that it is truly a chameleon. There is hardly any one thing which determines whether a person is or is not the head of a family. It is rather the combination of several things and so our courts have repeatedly ruled that each case must be decided on its own facts. 2 Fla.Law & Practice, Homestead Exemption, § 7, p. 304. There is, however, no fixed rule for defining homestead and head of family. Each case must be determined on its own individual facts and circumstances, and there is no invariable test, based upon legal dependence.
Actually, in each case the facts should be analyzed so as to carry out the purpose of the homestead exemption. The homestead exemption laws should be interpreted liberally and so as to shelter and preserve the family and family home so long as they are not interpreted in such manner as to become an instrument of fraud.
It has been argued that there cannot be two heads of a family and this makes sense, so long as it refers to the same family. That is not the situation in this case, however. Mr. Vandiver and the appellant are divorced, he has remarried, and appellant is not a part of Mr. Vandiver's family and he cannot be a part of her family. They each have separate and distinct families and each family is entitled to have its own head.
Further from the facts, Mr. Vandiver resides in Indiana, with his second wife, and is the head of a family in Indiana. He cannot be the head of a family residing in Florida.
It is contended that the son is a member of Mr. Vandiver's family because he is obligated to support him under the court decree and is paying the amount the court has ordered. It would not be a great strain on the judicial knowledge of this court to doubt that $25.00 per week and clothes *710 would furnish all, or even adequate, or the necessary needs of a 17-year old high school senior in Fort Lauderdale, Florida.
In further answer to the matter of obligation, there is apparently some obligation and duty on the part of the mother to support her children. F.S. 856.04, F.S.A. By this statute the appellant-mother is also, along with the father, made guilty of a felony if she wilfully deserts or withholds from her child the means of support. This would indicate a most definite obligation and duty on the part of the mother to support her child.
The deposition and affidavits in this case show that appellant was living in her home with her minor child, who recognizes her authority, and also that she is in charge of the family and the head thereof, prior to, at the time of, and continuously since, the entry of the judgment against her. She is providing for his necessities other than possibly food and clothing in her house. He naturally needs these clothes maintained and cleaned, he needs someone to purchase, select, prepare and serve him proper meals. He needs someone to love, counsel with, advise and guide him as he attends school and prepares for manhood, and the inferences are that all these services are furnished by his mother. Certainly the father is not present to do or attend to them. All in all, in the opinion of this court, the value of the services provided the son by his mother far exceed the amount of money expended on the son by his father.
The financial condition of appellant as shown by her deposition indicates that this family and home would be completely torn asunder if the homestead exemption were not allowed, and while there might be a question as to whether the father or mother, or both, could claim the child as a member of their family and entitled to homestead exemption, there is no such problem here as the father is a resident of Indiana and the head of a family there and cannot claim homestead exemption in Florida.
It is our opinion that the lower court was in error in entering summary decree against the appellant on the complaint filed against her.
We now turn to that portion of the appeal which attacks the summary decree of the lower court as to the counterclaim filed by the appellant. The counterclaim was filed on August 1, 1960, and the motion for summary decree was filed on August 4, 1960. There was no answer or sworn pleadings, affidavits, depositions, admissions, answers to interrogatories or exhibits filed in evidence with reference to the counter-claim, so that the summary decree would actually be an order of dismissal for failure to state a cause of action. The counter-claim alleges that on April 11, 1957, the plaintiffs in this cause filed suit against appellant and her husband for damages from a dog bite; that a default was entered against appellant and her husband on June 6, 1957, and thereafter the case was tried on April 7, 1958, without notice to appellant, and resulted in a verdict of $500.00 for the minor plaintiff and $800.00 for his mother; that the plaintiffs in this cause, mother and minor son, not being satisfied with this verdict, filed motion for new trial, which was granted by the court on May 29, 1958, but that no copy of the order was served upon appellant; that thereafter on June 6, 1958, the trial court, without notice to the appellant, entered its order setting said cause for trial on July 9, 1958, during the same term of court as the first trial; that no copy of this order was served upon appellant and no notice was given her as to the time of this trial; that the second trial resulted in a verdict of $6000.00 for the minor plaintiff and $1500.00 for his mother. The counter-claim alleges that the Spring Term of Court during which this case was tried on both occasions began on the second Tuesday in March, 1958, and continued through the second Tuesday in October, 1958, and that it was during this term that the default was entered and the two trials held, without notice to the appellant and no opportunity given her to defend on the question of *711 damages as to an unliquidated claim. The counter-claim then alleges that on September 9, 1958, and after the time for appeal had expired, an execution was issued against the real property of the appellant, which is the same property she is claiming as a homestead in this cause. The counter-claim contains a prayer that the judgment be set aside and declared null and void and that defendant be given an opportunity to defend on the issue of damages.
There is an apparent error in the allegations of the counter-claim, since it alleges that the default was entered on June 6, 1957; that the first trial occurred on April 7, 1958, and that the second trial occurred on July 9, 1958, and that the default and both trials each occurred between the second Tuesday in March and the second Tuesday in October of 1958. However, it is our opinion that the allegation that the second trial was had during the same term as the first trial, and without giving the appellant any notice as to the date of the trial or serving a copy of the order for trial upon her, was sufficient.
We feel that the case of White v. Spears, 123 So.2d 689 (Fla. 1960) is controlling as to this question. In this case complaint was filed seeking unliquidated damages; default was entered against the defendant on January 27, 1960; trial was held on February 23, 1960; final judgment was entered on March 14, 1960; motion to set aside final judgment was filed May 13, 1960, and order vacating the final judgment was entered on May 19, 1960.
The court held in White v. Spears, supra, at page 691:
"(5-7) An examination of the motion and affidavits submitted by the respondent as a basis for the motion to vacate the final judgment reveals a contention by her that she did not receive notice of the trial of the cause upon the issue of damages. The damages sought by the complaint were unliquidated. After the entry of default upon a complaint claiming unliquidated damages the cause must be set either upon a trial calendar and the issue of damages tried in its regular order, or the defendant must be given reasonable notice of the trial of the issue upon a special setting. Moore v. Boyd, Fla. 1952, 62 So.2d 427; Pan American World Airways, Inc. v. Gregory, Fla. App. 1957, 96 So.2d 669. Although the contention by the defendant, as supported by her affidavits, that she did not receive notice was controverted by the plaintiff, we conclude that the trial judge could have found from the record before him that the required notice was not given. This conclusion having been reached upon the matter before him the judge had jurisdiction to vacate the judgment. Cf. Ender v. Mercer, 150 Fla. 292, 7 So.2d 340."
The above opinion was printed after the lower court had ruled on this question.
The trial and final judgment held and entered without placing the case on the regular trial calendar and without notifying or giving the appellant opportunity to be heard on the question of damages is voidable and is subject to attack by this counter-claim in equity.
It may be that the court would sustain a motion to dismiss the counter-claim. This is not presented by this appeal and we do not pass upon it at this time, but, in any event, it was error to enter summary decree against appellant.
The summary decree as to the counter-claim is reversed and should be vacated, with leave to counter-defendants to file motion to dismiss or such defensive pleadings thereto as they may be advised.
It is unnecessary at this time to consider the other grounds argued for reversal of the summary decree, as they are not presented by the pleadings and were not argued before or ruled upon by the court below.
*712 Reversed, with directions to the lower court to proceed in accordance with this opinion.
KANNER, Acting C.J., and WHITE, J., concur.